[Crim. No. 6801.    In Bank.    July 20, 1961.]

THE PEOPLE, Plaintiff and Respondent, v. ROBERT
BURDETTE ROGERS, Defendant and Appellant.

Robert H. Aarons and Robert J. Johnston for Defendant and Appellant.

Stanley Mosk, Attorney General, Arlo E. Smith and Daniel A. Sharp, Deputy Attorneys General, for Plaintiff and Respondent.

WHITE, J.—Robert Burdette Rogers appeals from a judgment of conviction of murder in the second degree. The victim was his wife, Birdie Rogers.

Defendant and his wife and their three children resided in Los Angeles County. Mrs. Rogers' mother, Blondie Devericks, resided in Marin County, and as she was returning to her home from a visit with her daughter's family she was injured in an automobile accident and hospitalized. Mrs. Rogers immediately left to be near her mother. During Mrs. Rogers' absence of approximately three weeks she resided in her mother's home, which was otherwise unoccupied. After her return to her Los Angeles home her behavior caused the defendant to suspect that his wife had been consorting with another man or other men during her absence. She had on previous occasions admitted to the defendant that she had been unfaithful to her marriage vows with a number of different men and as a result thereof they had considered a dissolution of their marriage. But their problems evidently had been solved and an understanding had been reached which had been in effect for some time prior to Mrs. Rogers' aforesaid sojourn in Marin County.

Shortly after Mrs. Rogers' return home she left again for her mother's home in Marin County, this time acocmpanied by her husband and the other members of the family. It was intended that Mrs. Devericks would, shortly thereafter, be returned from the hospital. The defendant, still suspicious of his wife's conduct during her prior absence, made a search of the premises and found evidence in one of the bedrooms which strengthened his suspicions that his wife had been living with another man during her three-week stay there. He confronted her with this evidence and sought to obtain an admission from her. A heated argument ensued and continued intermittently during most of that day and evening. In an attempt to obtain a confession the defendant threatened Mrs. Rogers with a rifle, but she knew the gun was not loaded and the defendant was unsuccessful in obtaining an admission of wrongdoing from her. Thereafter he searched in vain for a pistol he thought to be in the home. Mrs. Rogers thereupon called the police and when an officer arrived she located and gave him the pistol.

During the course of the foregoing quarrel the defendant made inquiries of neighbors as to his wife's living arrangements during the three weeks she had lived in the home. He stated to them that he would kill her if he had a gun. In the opinion of these neighbors he appeared to be rational, although obviously under emotional stress.

Some agreement was eventually reached to the effect that the parties would be divorced, and that the children would stay with the defendant. The latter started driving to Los Angeles but returned because of his lack of funds. It was finally decided that he and the children would return to their Los Angeles home the following morning, and that they would spend the night in the Marin County home.

During the night the defendant found a rifle and ammunition under the bed in which he slept. Mrs. Rogers spent the night in another room. In the morning he loaded the rifle and hid it behind a bedroom door. Later, when Mrs. Rogers entered the bedroom, he retrieved the gun and pointing it in the direction of her face stated: "This is your last chance to come to your sense." He thereupon fired the gun, causing his wife's death. He contends that he intended only to frighten her so that she would confess her misdeeds and thereafter remain faithful to him, and that the gun was accidentally discharged. After the homicide he drove the children to Los Angeles County and later surrendered himself to the police.

The defendant was charged with murder, entered a plea of not guilty thereto, and waived a jury trial. Prior to the submission of any evidence counsel for the parties entered into a stipulation, the effect of which presents the sole issue on appeal. The stipulation was presented by defendant's counsel in the following manner: ". . . we have been discussing a form of stipulation amongst ourselves that in addition to the waiver of the right to a jury trial by the defendant, that Your Honor will consider the evidence as presented to you with this restriction: that *Your Honor will be restricted to either a finding of second degree murder or a finding of voluntary or involuntary manslaughter and that Your Honor would be precluded from a finding of first degree murder or a finding of not guilty under the circumstances.*" (Emphasis added.)

The following colloquy then took place:

"THE COURT: What was the last statement?

"MR. STOUT [attorney for Rogers]: There would be no possible finding of not guilty or of first degree murder.

"MR. GARETY [district attorney]: That was my understanding.

"THE COURT: That no possibility of finding of not guilty and no possibility of finding of first degree murder?

"MR. GARETY: That's correct, Your Honor.

"THE COURT: And the finding would be either manslaughter or second degree murder?

"MR. GARETY: Yes, Your Honor, and of course, that is on the premise based on the discussions with the Court of various aspects of this case that satisfied the Court that is a proper procedure.

"THE COURT: Yes."

There is some doubt from the foregoing whether the trial judge held himself to be bound by the stipulation. That doubt is not completely dispelled by the further proceedings which thereafter took place. On the following day, while sustaining a hearsay objection by defense counsel, the judge made the following comment: "A lot of these things in this trial we are hearing may be exposed to legal objection, you see, but exposure is quite different than a trial in which a presumption of innocence goes throughout and the sole purpose of the fact finder is to find guilt or innocence, but here is something different—a pseudo trial because the Court is bound—the defendant cannot be—under the stipulation, found guilty of murder first or be found innocent, so it all goes to throw light

on every aspect, if that light will help determine the true nature of the crime.''

While the above comment indicates that the trial judge felt he was bound by the stipulation, nevertheless, on the sixth and last day of the trial, before hearing arguments, he stated that, ''. . . were I trying this case without the stipulation of counsel, I would be inclined to find the defendant guilty of murder in the first degree,'' and later that, ''. . . in the orderly system of jurisprudence, I doubt very much whether it [the stipulation] could tie the hands of the Court or whether it could diminish or depreciate the jurisdiction of the Court.'' After commenting on the facts he stated further: ''I regret under all of these influences I reached the conclusion that I am impelled toward the conclusion—I have not reached it, but I am impelled to the conclusion that the defendant here was guilty of murder in the first degree.''

Finally, after argument, the trial judge commented as follows: ''I have, very obviously, gentlemen, exposed my thinking and I told you I was impelled to the conclusion this man was guilty of murder in the first degree. That is one man's opinion but there is no need to elaborate at all on that because I am going to keep my judgment within the fabric of the situation—murder in the second degree or manslaughter. The primary reason is, this man waived his right to trial by jury—based on that stipulation, so I have been impelled to the conclusion and still firm in my conviction, that the defendant is guilty of murder in the second degree and it is the decision of the Court that the defendant is guilty of murder in the second degree.''

The vice of the stipulation, if given effect to by the trial judge, is that it constitutes in practical effect a withdrawal of defendant's plea of not guilty and the entry of a plea of guilty to either murder in the second degree or manslaughter, not made personally by defendant but by his counsel. At no time during the trial did defendant personally change his plea or make reference to the stipulation. Section 1018 of the Penal Code specifically provides in part that, ''. . . every plea must be put in by the defendant himself in open court,'' and that this ''section shall be liberally construed to effect these objects and to promote justice.'' The section has been liberally construed. (*People* v. *Manriquez,* 188 Cal. 602, 605 [206 P. 63, 20 A.L.R. 1441] ; *People* v. *McCrory,* 41 Cal. 458; *People* v. *Stratton,* 133 Cal.App. 309 [24 P.2d 174].) Convictions are held to be invalid where a guilty plea is

entered by a defendant's attorney where the record reveals that the defendant did not authorize such plea. (*In re Martinez*, 52 Cal.2d 808, 815 [345 P.2d 449].)

Although, as stated, the effect of the stipulation is not free from some doubt, the more reasonable conclusion would appear to be that the trial judge was influenced thereby, and it sufficiently appears from his comments that he did in fact render a decision which was dependent at least in part on the stipulation. But even if we were left with an ambiguity which could not be as readily resolved we could not, consistent with the concept that an accused is constitutionally entitled to a fair trial, presume in these circumstances that the trial judge disregarded the stipulation and might have found the defendant innocent if such a finding was justified.

The attorney general contends that the defendant personally entered his plea of not guilty pursuant to section 1018 of the Penal Code, which plea was the effective plea throughout the proceedings. While technically this is correct as no formal plea other than not guilty was entered herein, the contention looks only to the form of the proceedings and not to the substance thereof. In substance the stipulation necessarily had the same effect as a plea of guilty entered by an attorney for his client since it purported to eliminate from the trial the question of defendant's innocence. Where the trial judge, who was also the trier of fact, has abided by the stipulation whether because he felt absolutely bound thereby or because he voluntarily acted pursuant thereto, it is manifest that the defendant has been denied the presumption of his innocence, which remains with him throughout the trial and is removed only by a finding of guilt.

The attorney general further contends that defendant was present in open court at the time of the stipulation, that he heard and understood it, and that he has waived his right to now object after having reaped the benefits thereof. Consistent with that contention the attorney general also claims that if the stipulation was relied upon in error by the trial judge, no prejudice resulted therefrom and that we are bound to affirm the judgment pursuant to section 4½ of article VI of the Constitution.

In *In re Martinez, supra*, 52 Cal.2d 808, involving a defendant's express waiver of right of counsel, it was stated at page 815 that the purpose of the requirement of section 1018 that the defendant enter his own plea was to "ensure that the plea is his own," and that if there was such assurance

in the record a judgment could not be held *void,* although error might have been committed because the plea was not personally entered by the defendant.　　In solving the problem as to what constitutes a defendant's plea as "his own," we are aided by the case of *People* v. *Holmes,* 54 Cal.2d 442 [5 Cal.Rptr. 871, 353 P.2d 583], wherein the court was concerned with an analogous situation involving the waiver of the constitutional right to trial by jury, which waiver is required to be "expressed in open court by the defendant and his counsel." (Const., art. I, § 7.) It appeared that the defendant there, as in the instant case, did not expressly join in the statements made by his counsel in open court, although being present in court and offering no objection to the proceedings. The court held that the waiver must be expressed "and will not be implied from a defendant's conduct. (Citations.)" The court continued at page 444: "Experience has shown that there is sound reason for this requirement. If the waiver were left to implication from conduct, there would be a danger of misinterpretation with respect to a right the importance of which requires there be certainty." Manifestly the entry of a plea in a prosecution for a felony cannot be said to be less important than the waiver of trial by jury. The record in the instant case reveals no express authorization by the accused to his counsel for either the withdrawal of his plea of not guilty or the adoption of the stipulation that the defendant was guilty of murder of the second degree or manslaughter. Since the waiver of a right so important cannot be left to implication the defendant cannot be said to have authorized the stipulation agreed to by counsel, and the judgment in the instant case must be held to be invalid.

　　As to the contention that the error, if any, did not result in a miscarriage of justice within the meaning of section 4½ of article VI of the Constitution, the attorney general argues that the remarks of the trial judge indicate that a heavier penalty would probably have been imposed had the trial judge felt that he was free to act according to his own convictions. But it is manifest that the basic nature of the defect in the instant proceedings caused the entry of a *void* judgment and deprived the defendant of due process of law, which deprivation cannot be remedied by the saving grace of section 4½ of article VI of the Constitution.

Other contentions by defendant, to the effect that the trial was a "sham" and that evidence was improperly admitted, are without merit. Defendant's counsel offered a vigorous defense,

and his conclusions in certain instances relating to the propriety of objecting to hearsay evidence were trial tactics well within his discretion.

The judgment is reversed.

Gibson, C. J., Traynor, J., Schauer, J., McComb, J., Peters, J., and Dooling, J., concurred.

Respondent's petition for a rehearing was denied August 16, 1961.