**Frederick GRAY, Petitioner,**

v.

**Lawrence E. WILSON, Warden, San Quentin Prison, et al., Respondents.**

**No. 41890.**

United States District Court
N. D. California, S. D.
June 18, 1964.

Malcolm J. Rainsford, San Francisco, Cal., for petitioner.

Stanley Mosk, Atty. Gen. of Cal., Albert W. Harris, Jr., and Robert R. Granucci, Deputy Attys. Gen., San Francisco, Cal., for respondents.

ZIRPOLI, District Judge.

Frederick Gray, a state prisoner confined in San Quentin Prison, California, petitions this Court for a writ of habeas corpus on the ground that his conviction is in violation of the federal constitution. Petitioner was convicted by the Superior Court of Los Angeles County of violating Section 245 of the Penal

Code of California (assault with a deadly weapon). As a result of his conviction, the Superior Court revoked his probation on a prior conviction of a similar offense. Since probation on the prior conviction was revoked because of the recent conviction, his confinement for both convictions is invalid if the recent conviction is invalid.

Petitioner plead not guilty, and when the case came on for trial he waived his right to a jury trial. The waiver was taken by the trial court after the prosecutor thoroughly questioned petitioner, so that the record was clear that petitioner understood that he had a right to a jury trial and that he was making an intelligent and understanding waiver of that right.[1] Immediately after the waiver of the jury trial was taken, the prosecutor offered to stipulate that the matter be submitted on the transcript taken at the preliminary hearing. Petitioner's counsel, Mr. Kilbride, a deputy public defender, accepted the stipulation, waived argument, and submitted the matter. The Court found petitioner guilty of a violation of Section 245 of the Penal Code. The record does not show any assent by petitioner to the submission on the transcript without cross examination or confrontation of the witness; however, the record also fails to show any objection by petitioner to this procedure.

Since the commitment to state prison, petitioner has filed several papers with this Court seeking relief by way of habeas corpus. He alleged several grounds for relief in his various petitions, but this Court has ruled that the only possible basis for relief is the following allegation with regard to the procedure at petitioner's trial:

"On or about May 7, 1962 I was taken to trial in Superior Court 117. I was placed in a room along with other prison to waite trial. There was a case going on of one of the prison a continue from the day befor. So he was called in then later I was called in for trial. Mr. Kilbridge said he was my councal, and came to me and said Mr. Gray you is going to the peneatery. He was not my councal in Municiple Court, and had never talk to me about this case. The case went as follow the judge read the peoples of the State of California v. Frederick

1. "THE COURT: All right. People versus Frederick Gray, 256751. The record may reflect that defendant is present with his counsel, counsel for the People also present.

"MR. KILBRIDE: Your Honor, my client wishes to waive or give up his right of trial by jury and have his case decided by this Court without a jury, and it is our wish that the matter be decided on the evidence taken at the preliminary hearing.

"THE COURT: All right. Will you take the waiver of jury trial.

"MR. CROSSMAN: Yes, your Honor. Frederick Gray, is that your true name?

"(Defendant nods in the affirmative.)

"MR. CROSSMAN: You will have to answer up so the reporter can hear you.

"THE DEFENDANT: Yes.

"MR. CROSSMAN: You spell your last name G–r–a–y.

"THE DEFENDANT: Yes.

"MR. CROSSMAN: Mr. Gray, do you understand that you are entitled to have your case tried by a jury composed of twelve people or you can give up that right and have the Judge sitting without a jury determine your case; do you understand that?

"THE DEFENDANT: Yes.

"MR. CROSSMAN: And your attorney, Mr. Kilbride, has represented to the Court that you wish to give up your right to a jury trial and have the Judge decide your case. Is that what you want to do?

"THE DEFENDANT: Yes.

"MR. CROSSMAN: You are doing that freely and voluntarily, Mr. Gray?

"THE DEFENDANT: Yes.

"MR. CROSSMAN: All right. Do you at this time give up your right to a jury trial?

"THE DEFENDANT: Yes.

"MR. KILBRIDE: Counsel joins in the waiver.

"MR. CROSSMAN: People join in the waiver.

"THE COURT: The Court will accept the waiver of jury trial."

(Reporter's Transcript pp. 1 and 2, proceeding in Superior Court May 10, 1962.)

Gray. Then Mr. Kilbridge stated your honorable it is our wishes that the matter be heard on the preliminary hearing testimony.

"Then the district Attorney ask me if I wanted a jury trial or court trial. I said I wanted a court trail. Then the district attorney ask me again who I wanted to deside this case and I said the judge I may say here I was still looking for a trial. Then somthing came up about this other case that was going on befor I came in and they called a recease on my case and sent me out. Later I was call back into the court room, and the judge said well this case have been submited on the prelemary hearing testimony, and do any one else have anything to say. The record do not show this but I attempted to get up to say something, and my councal said to me sat down you will be charged with attempt court, and then my councal said no. Then the Judge said I find the defendant guilty. My councal then ask for probation hearing, and a examination of me this was granted and set for 22 days later." (Page 2 of the petition filed November 6, 1963.)

The basic claim presented by the above allegation is that petitioner did not personally waive his right to cross examination and confrontation of the prosecution witnesses.

■■ At the outset it should be noted that counsel have not cited any case nor has the Court found a case where a federal court has specifically ruled that the right to cross examination and confrontation is embodied in the due process clause of the Fourteenth Amendment. However, the Supreme Court has held that procedural due process requires that a state bar association permit an applicant to cross examine and confront the witnesses against him in an administrative hearing to determine his fitness for the practice of law. Willner v. Committee on Character, 373 U.S. 96, 83 S. Ct. 1175, 10 L.Ed.2d 224. If a state

must accord the right to cross examination and confrontation in an administrative hearing, a fortiori it must accord such rights in a criminal trial. Moreover, the right to cross examination and confrontation is essential to a fair trial if the rules of procedure are to have as one of their objects the ascertainment of the truth. Wigmore on Evidence, Vol. 5, p. 28, § 1367 (3rd ed.) The Court therefore holds that the right of the accused to cross examine and confront prosecution witnesses in a state criminal trial is guaranteed by the due process clause of the Fourteenth Amendment.

■ The accused may, however, waive his right to cross examination and confrontation. Diaz v. United States, 223 U.S. 442, 32 S.Ct. 250, 56 L.Ed. 500. Normally, waiver is made by counsel as to particular witnesses, since as every trial lawyer knows, it is just as important to know when not to cross examine as it is to know how to cross examine. In such matters the accused must accede to his lawyer's judgment. As a practical matter, a reviewing court cannot find a denial of the constitutional right to cross examination merely on the basis of an error in trial tactics unless the error is so gross as to constitute a denial of adequate and effective assistance of counsel. Brubaker v. Dickson, 310 F.2d 30 (9th Cir.1962). But there is a vast difference between questions of trial tactics and the complete submission of the issue of guilt or innocence on the cold record of a transcript. Practically speaking, such submissions are often nothing more than a "slow plea of guilty". The waiver of cross examination and confrontation by submission on a preliminary transcript must be made by the accused rather than his attorney. Anything to the contrary in Cruzado v. People of Puerto Rico, 1 Cir., 210 F.2d 789, suggesting a different conclusion is not controlling here in light of Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed. 2d 837 (see infra).

The Supreme Court has held that a state court's finding of waiver does not bar independent determination of the

question of waiver by the federal courts in habeas corpus hearings because waiver affecting federal rights is a federal question. Fay v. Noia, 372 U.S. 391, at 439, 83 S.Ct. 822, at 849. In order to determine whether there has been an effective waiver of a federal constitutional right, the Court in Fay v. Noia, supra, set forth the following guidelines:

"The classic definition of waiver enunciated in Johnson v. Zerbst, 304 U.S. 458, 464 [58 S.Ct. 1019, 1023, 82 L.Ed. 1461]—'an intentional relinquishment or abandonment of a known right or privilege'—furnishes the controlling standard. If a habeas applicant, after consultation with competent counsel or otherwise, understandingly and knowingly forewent the privilege of seeking to vindicate his federal claims in the state courts, whether for strategic, tactical, or any other reasons that can fairly be described as the deliberate by-passing of state procedures, then it is open to the federal court on habeas to deny him all relief if the state courts refused to entertain his federal claims on the merits —though of course only after the federal court has satisfied itself, by holding a hearing or by some other means, of the facts bearing upon the applicant's default. Cf. Price v. Johnston, 334 U.S. 266, 291 [68 S.Ct. 1049, 1063, 92 L.Ed. 1356]. At all events we wish it clearly understood that the standard here put forth depends on the considered choice of the petitioner. Cf. Carnley v. Cochran, 369 U.S. 506, 513–517 [82 S.Ct. 884, 888–891, 8 L.Ed.2d 70]; Moore v. Michigan, 355 U.S. 155, 162–165 [78 S.Ct. 191, 195–197, 2 L.Ed.2d 167]. A choice made by counsel not participated in by the petitioner does not automatically bar relief."

Therefore, the issue before the Court boils down to whether the record in this matter shows an "intentional relinquishment or abandonment of a known right or privilege" by the defendant personally rather than by his counsel.

At the hearing on this matter before this Court, petitioner testified that the public defender, Mr. Kilbride, did not mention anything to him about submitting the matter on the transcript. The pertinent portions of petitioner's testimony are as follows:

"MR. RAINSFORD: Calling your attention to the morning of May 10th, 1962, were you represented by the Public Defender of Los Angeles?

"MR. GRAY: Yes, I was.

"Q. Do you know his name?

"A. Mr. Kilroy, I think it was.

"Q. At that time, when your case was called for trial, did you waive your right to a jury trial?

"A. I did.

"Q. Now, after your waiver had been taken, was your case submitted on the transcript of the preliminary hearing?

"A. Yes, it was.

"Q. Now, Mr. Gray, did you consent to this submission of your case on the basis of the preliminary transcript?

"A. No, sir. I didn't at no time.

"Q. Did the Public Defender, your attorney, your counsel, explain the consequences of such a submission on the transcript of the preliminary?

"A. No, he didn't.

"Q. Did Judge Peracca, who presided that day, explain to you the consequences of the submission of your case on a preliminary transcript?

"A. No, he did not.

"Q. Did the Public Defender talk to you that morning in Court?

"A. He came over and said, 'You are going to the penitentiary,' and that is all he said."

(Tr. page 5, line 1 to page 6, line 4)

"MR. RAINSFORD: Mr. Gray, at any time that morning of the trial

did anyone, the Judge or the Public Defender or any Court attache, explain to you that by submitting your case on the transcript of the preliminary that you were waiving your right to confront the witnesses and your right to cross-examine the witnesses?

"MR. GRAY: No, they did not.

"Q. How much education do you have?

"A. I finished high school.

"Q. Where was that?

"A. Marshall, Texas.

"Q. What was your employment?

"A. Janitor.

"MR. RAINSFORD: That is all.

"THE COURT: All right, Mr. Granucci.

"MR. GRANUCCI: Thank you." (Tr. page 9, line 21 to page 10, line 11)

"MR. GRANUCCI: Now, did you consult with Mr. Kilbride at any time before the trial, at any time before you came to Court on this case?

"MR. GRAY: No Mr. Kilbride was just appointed to me.

"Q. So it is your testimony that you did not consult with him at all?

"A. Not before.

"Q. Did you consult with him at any time?

"A. No.

"THE COURT: That is the only thing he ever told you, that you were going to the penitentiary?

"THE WITNESS: That is the only thing.

"THE COURT: That is the only conversation you ever had with him.

"THE WITNESS: Yes, sir. I had another Public Defender before him.

"MR. GRANUCCI: Mr. Gray, I am going to remind you that you are under oath in answering this. Did you tell Mr. Kilbride that you thought you had a good defense to this case?

"A. No, I did not.

"Q. Did you tell Mr. Kilbride that you could not remember anything about the facts of this case?

"A. No, I didn't tell him.

"Q. Did Mr. Kilbride tell you that he thought that it was the most advisable thing to do under the circumstances, to submit it on the preliminary transcript?

"A. No, he did not." (Tr. page 12, line 17 to page 13, line 19)

Mr. Kilbride testified as follows:

"MR. GRANUCCI: Did you consult with Mr. Gray at any time before making an appearance on his behalf in the Superior Court?

"MR. KILBRIDE: Yes, I did.

"Q. How many times?

"A. I believe—My best recollection is twice before the proceedings commenced in Court.

"Q. Did you inform him of the nature of the charge and discuss possible defenses?

"A. There was such a discussion, yes.

"Q. Did you advise him that you felt that the most advisable course was to submit the matter on the preliminary transcript?

"A. Yes.

"Q. Did he object to such a course of action?

"A. No, he did not object to that course of action.

"Q. Did he indicate to you his agreement with that course of action?

"A. He agreed with me that that might be done, and we did it." (Tr. page 17, line 4 to line 23)

"MR. RAINSFORD: When were you appointed to represent the petitioner? Calling your attention to May 10th, when were you appointed, if you can recall?

"MR. KILBRIDE: I don't recall. I can tell you what the usual—

"Q. Not the usual, Mr. Kilbride. Had you represented the petitioner for some period of time before he made that court appearance?

"A. My best recollection is that I did see him some period of time before the date of trial, yes.

"Q. You stated on your direct, I believe, that you had taken over from another Public—or did you not, sir?

"A. I did not say that myself, no.

"Q. Did you consult with the petitioner in the County Jail? Do you recall, sir?

"A. My recollection is that I did. But that is my best recollection."
(Tr. page 22, line 23 to page 23, line 15)

"MR. RAINSFORD: Did you talk to the defendant on the morning of May 10th?

"MR. KILBRIDE: Yes.

"Q. Where did you talk to him?

"A. I talked to him, according to my best recollection, in the detention room outside the Court.

"Q. What did you say to him?

"A. I cannot recall what language I used.

"Q. Did you explain to him the legal principles involved in a submission on the transcript?

"A. I gave him what I considered to be an adequate explanation, yes, for his purposes.

"Q. What is an adequate explanation for his purposes?

"A. As I say, I can't recall specifically what I said, but my best recollection is that I informed him that if the matter were submitted to the judge on the testimony of the preliminary hearing, what would happen would be that the trial judge would read the testimony of the people who had come and testified at the preliminary hearing, that he would consider their testimony, that both sides would have the right to call additional witnesses, but that I did not intend to call any additional witnesses myself.

"Q. How much time did you spend on this conversation?

"A. I don't recall."
(Tr. page 24, line 24 to page 25, line 25)

"THE COURT: You had this conversation with him in the detention room. What did he say when you made this suggestion?

"MR. KILBRIDE: The defendant—I can't recall specifically what I said, but I can say that he indicated to me that I could proceed in that manner. What I am trying to say is that he wasn't happy about having to stand trial.

"THE COURT: And he agreed to have his case disposed of in that fashion?

"MR. KILBRIDE: That is my best recollection, yes. I might say, though, Your Honor, I could observe, for Your Honor's benefit, that he had been incarcerated perhaps two months at that time and that may have a bearing upon that. If he was given to drinking prior to that time, the question might be whether in two months he had completely recovered from drinking; you see, it might have some slight bearing on it."
(Tr. page 27, line 4 to line 21)

Mr. Kilbride testified that during the course of a single year he handles approximately 140 felony trials and represents approximately 300 defendants. The major problem in Mr. Kilbride's mind at the time of trial was to present a good case for probation rather than to seriously adjudicate the question of guilt or innocence. As Mr. Kilbride explains it:

"MR. GRANUCCI: Now, counsel has raised this question, and I would like to explore it. Did you file a mo-

tion under Section 1382 of the California Penal Code for an appointment of a psychiatrist?

"A. No.

"Q. You did not?

"A. I filed it under 1871 CCP.

"Q. What was the purpose of that?

"A. My purpose was to explore the possibility of presenting the Judge who would sentence him with some theory upon which probation might be predicated.

"Q. In other words, you felt that this might give the—you had had your client convicted of an offense for which probation was possible; is that correct?

"A. Yes.

"Q. And you felt that this was the most advisable to seek, to get probation, was to—

"A. Yes. This is not an ordinary situation.

"Q. What was extraordinary about it, Mr. Kilbride?

"A. Well, the problem was that the defendant was presently on probation for a very similar offense. In fact, if my recollection serves me right, it was the same complaining witness as in the case which I represented. Therefore, the ordinary result which you would expect if you are experienced in these matters, or if you are not, that the typical judge would be inclined to send him to the State Prison. My thought was that if it could be developed that there was a physical disorder which would be amenable to some type of medical treatment which would contribute to his misbehavior, if I could approach the judge with such a potential program where he could get medication under supervision, that this might possibly persuade the judge to consider or to grant him further probation.

You see, although these facts appeared to me to be unavoidable, at the same time it was also evident that Mr. Gray was basically a devoted family man who loved his wife, and he had many children by her, and for the most part behaved himself very well. I expected that would impress the Court, too. So that we were not dealing with a man who was fundamentally a person what you might call of evil disposition, but whose disposition was good most of the time. And if the Court felt that this man was fundamentally a law-abiding person who possibly might be subject to some special type of treatment, then I thought perhaps we might be able to keep him out of prison that way. At the time, and even today, that seems to me to be the only even potential way of avoiding present commitment."

(Tr. page 17, line 24 to page 19, line 22)

In weighing the above testimony, the Court cannot disregard the fact that petitioner, although a high school graduate, is a man of limited educational background, as seen from the above quotation of his pleadings. Nor can the Court disregard the fact that Mr. Kilbride is relating a conversation that took place two years ago at the time that Mr. Kilbride was handling several hundred cases a year in a very busy office. Mr. Kilbride's major concern at the time was to try to convince the Court of the desirability of probation, rather than attempting to establish petitioner's innocence. Mr. Kilbride does not recall how long the conversation took place, how many times he talked with petitioner, or what, if anything, petitioner said in response to the suggestion to submit the case on the transcript. Mr. Kilbride's "best recollection" is that he explained that the procedure involved having the judge read the transcript. The fact that Mr. Kilbride used the phrase "best recollection" suggests that he does not remember the details of the conversation. Nowhere in the record does it appear that petitioner was made aware of the fact that he had the constitutional right to have the wit-

nesses cross examined, to confront them, and to have the trial judge observe their demeanor.

■■ In light of the above factors, the Court could do no more than guess as to whether petitioner understood that he had a constitutional right to cross examination and confrontation; that the probable consequences of such a procedure would be a finding of guilt; and that with these facts in mind he agreed to such a procedure. A waiver of a federal constitutional right is not to be lightly presumed. Himmelfarb v. United States, 9 Cir., 175 F.2d 924. The most likely interpretation of the above record is that Mr. Kilbride suggested a procedure and the petitioner simply left the matter up to his attorney without fully understanding that he had a right to cross examination and confrontation, and that the probable consequence of this procedure would be a finding of guilt. Upon reviewing the entire record and observing the demeanor of the witnesses, the Court seriously doubts that the decision to submit this case on the transcript was the "considered choice of the petitioner", Fay v. Noia, supra. Certainly, the Court cannot find a waiver of a federal constitutional right where the most that the record will permit is speculation as to petitioner's understanding of his rights and the probable consequences of such a waiver.

■ The problem presented by this case raises an important problem in the administration of criminal justice and the role of the federal courts in post-conviction review of state proceedings by way of habeas corpus. A federal court has the duty to insure that state courts do not deprive defendants of federal constitutional rights. Certainly no federal judge relishes the thought of upsetting a state conviction where the evidence of guilt is as strong as it is in the present case. But it must be borne in mind that a great number of criminal defendants are persons of limited educational, cultural and intellectual backgrounds. Only those who are "con-wise" have more than a vague understanding of criminal procedure. A federal court cannot lightly assume or speculate that the average defendant fully understands his constitutional procedural rights.

■ The better procedure, although not the constitutionally required procedure, for all courts, whether state or federal, would be for the trial judge to fully examine the accused on the record to insure that he is aware of his constitutional rights, that he is making an intelligent waiver thereof, and that he appreciates the possible consequences of such a waiver. Cf. Johnson v. Zerbst, 304 U.S. 458, at 465, 58 S.Ct. 1019, 82 L.Ed. 1461 (1937). Not only does such a procedure have the advantage of preventing a subsequent reversal of the conviction on post-convicton review, it has the more important advantage that the accused would be assured of having a clear understanding of the significance of any waiver he might make. As a result, both the interest of the state and the rights of the accused would be more fully protected. Without a clear waiver on the record, as was done in this case with regard to the waiver of a jury trial, the federal courts must continue to hold hearings and weigh conflicting and uncertain evidence, all of which entails the double risk of failing to adequately protect the rights of the accused or to unduly interfere with the administration of state criminal justice by overturning an otherwise valid conviction.

The Court is painfully aware of the fact that many state prisoners are serving sentences under convictions which were obtained by procedures similar to that adopted in this case. In light of the fact that the federal courts are already overburdened with habeas petitions from state prisons, the Court is not pleased with having to render a decision which may tend to "open the floodgates", but such a consideration has no place in a judge's decision as to whether a person is presently serving a prison sentence in violation of the constitution. The duty of the federal courts in these times of change in the law of criminal procedure has been aptly stated by Judge Hastie in

the recent case of United States ex rel. Craig v. Myers, 3 Cir., 329 F.2d 856, 859:

"In actuality, all criminal convictions, all appellate judgments reversing convictions and, most notably, all judgments sustaining collateral attacks on convictions impose legal consequences upon the basis of the court's present legal evaluation of past conduct. It is irrelevant that the judge's views of what constitutes a denial of due process may have changed since the occurrence of the events in suit, or that he or some other judge might have rendered a different decision had the same matter reached his court years earlier. The petitioner is entitled to the most competent and informed decision the judge can now make whether there was fundamental unfairness in his past conviction. Our system is not so unenlightened as to require that in attaching *present* consequences to 1931 occurrences, a judge must ignore all of the insight that men learned in the law and observant of human behavior have acquired concerning the essentials of tolerable criminal procedure during the past 30 years."

Before concluding, the Court wishes to note for the record that its findings are not in any way intended to cast aspersions upon Mr. Kilbride's integrity, truthfulness or professional abilities; nor does the Court wish to imply that he was not acting in the best interests of his client by concentrating on the sentencing problem rather than the question of guilt or innocence. In light of petitioner's own tacit admissions of guilt, his lack of protestation of innocence, and the overwhelming evidence of guilt in the record before the Court, Mr. Kilbride had little choice but to concentrate on the sentencing problem. Finally, the Court expresses its thanks to Mr. Malcolm Rainsford of the San Francisco bar for his excellent representation of petitioner as court appointed counsel without compensation.

The petitioner is remanded to the Superior Court of the State of California in and for the County of Los Angeles for further proceedings not inconsistent with this opinion, and the respondent, Warden of the California State Prison at San Quentin, California is directed to deliver petitioner into the custody of the Sheriff of the County of Los Angeles of the State of California for the purposes of this remand. The foregoing order and directive of this Court to the respondent is stayed for a period of ten (10) days.