[Crim. No. 10503.   Second Dist., Div. Two.   May 9, 1966.]

THE PEOPLE, Plaintiff and Respondent, v. ALPHONSO DICKERSON, Defendant and Appellant.

Richard R. Mainland, under appointment by the District Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and George J. Roth, Deputy Attorney General, for Plaintiff and Respondent.

FLEMING, J. — Alphonso Dickerson was charged with assault with intent to murder (Pen. Code, § 217). Represented by the public defender, he waived trial by jury and had his case tried by the court. He was convicted of the lesser offense of assault by force likely to produce great bodily injury (Pen. Code, § 245).

Mrs. Gertrude Devezin, the complaining witness, a widow, knew Dickerson slightly and occasionally employed him to run errands for her. On the evening of July 9, 1964, Dickerson came to her apartment and beat her into unconsciousness. He repeatedly kicked her in the face, broke her jaw, and inflicted other serious injuries. She testified he said ''I'm tired of you talking about your son. . . . I'm going to kill you.'' She saw an electric cord in his hands, and at the hospital she discovered that her throat was bruised.

A second witness, Cary Banks, saw defendant leave Mrs. Devezin's house with an extension cord in his hand. Defendant said, ''I just beat the old so-and-so, you know, up. . . . If she isn't dead, I should go back and kill her.'' Mr. Banks went to Mrs. Devezin's apartment, found the living room a wreck, saw blood all around, and discovered Mrs. Devezin in a chair covered with blood from her head down, with a bruise and a purple mark on her neck.

A third witness, Evelyn Baker, saw the defendant on her porch with an extension cord around his arm and heard him say, ''Somebody ought to go down there and see how Gertrude is because I think I have killed her.'' Mrs. Baker ran to Mrs. Devezin's apartment and found the latter covered with blood, with her head cut and bleeding and with a purple or brown mark around her neck.

For the defense, Dickerson testified that he and two other men had been drinking with Mrs. Devezin for several hours, that the other two had passed out, recovered, and left the premises, and that later he had found Mrs. Devezin lying in the bathtub bleeding from her head. She told him she didn't want an ambulance. Outside the apartment he saw Mrs. Baker and asked her to see about Mrs. Devezin. At that time he told the other witnesses, ". . . She's fallen into the tub and tried to murder herself. . . . Maybe I should go back and finish the job." He had been drinking but he remembered every-thing that happened, was not befuddled, and not given to blackouts.

In rebuttal, Mrs. Devezin testified that no other persons had been on her premises and that no drinking party had taken place.

Counsel for both sides briefly argued the matter to the court, a discussion took place among court and counsel, and the court found the defendant guilty—not of assault with intent to murder, but of the lesser offense of assault by force likely to produce great bodily injury.

Dickerson's principal contention on appeal is that his coun-sel conceded his guilt in final argument to the court and there-by denied him the effective assistance of counsel guaranteed by the Sixth and Fourteenth Amendments.

At the conclusion of the testimony the prosecutor made a two-sentence argument to the court in support of the charge of assault with intent to commit murder. He directed the court's attention to the defendant's statement that if Mrs. Devezin wasn't dead he should go back and kill her, to the testimony of Mrs. Baker describing the purple line around the victim's throat, and to the cord which defendant conceded he had been carrying.

In reply, the public defender began with the statement, ". . . . assuming for the purposes of argument . . . the very serious assault that was here made, . . ." and continued with a brief argument on the failure of proof of intent to commit murder. In the course of developing this theme, he explained away defendant's statements at the scene—that he might have killed her, that maybe he should finish the job—as at most indicating an awareness that Mrs. Devezin had been seriously hurt. He argued that the evidence did not amount to proof beyond a reasonable doubt of intent to commit murder.

Following this argument the court asked counsel for both sides to comment on the victim's testimony that as the defend-

ant was beating her, he said he was going to kill her. In response, the public defender suggested she had testified the defendant had said he ought to kill her rather than that he was going to kill her,[1] and again referred to the absence of proof of intent to murder. The prosecutor countered by drawing the court's attention to the attempt to strangle the victim. Defense counsel replied that the evidence showed that if the defendant had really wanted to strangle Mrs. Devezin he had had plenty of opportunity to do so. Court and counsel then continued:

"MR. NUNNELLY: . . . I don't know why a big, strong man like the defendant would get involved in this situation if he actually intended to kill a woman and then right, let's say, the middle of it, or near where it looks like this was going to happen, stop. The mere fact that it didn't happen—

"THE COURT: What serious crime do you feel is involved here, Mr. Nunnelly?

"MR. NUNNELLY: Sir?

"THE COURT: What serious crime do you feel is involved here?

"MR. NUNNELLY: I think there is assault with force likely to produce great bodily injury, without any question.

"THE COURT: Mr. Kahanowicz?

"MR. KAHANOWICZ: I would suggest of the Court that the evidence shows a crime as charged. I think that Mr. Nunnelly is reading into the evidence the fact that the defendant voluntarily desisted. Now, this is speculation. We do not know. We weren't there. It may very well be that when he left the victim, she was, to all appearances, bloody and dead. So we are speculating when we say that he voluntarily desisted. It seems with the condition of the victim being so violently physically molested, it would be just as logical to assume that she had lost consciousness. . . . So I would vote for the verdict of guilty as charged."

Thereupon the cause was submitted, and the court found the defendant guilty of the lesser-included offense of assault by force likely to produce great bodily injury.

---

[1]This suggestion had been insinuated into the case by the public defender himself, using the traditional methods by which defense counsel attempt to modify the force of unfavorable testimony. On direct examination Mrs. Devezin testified the defendant had said, "I'm going to kill you." On cross-examination, defense counsel through the use of leading questions achieved the following:

"Q. You said the defendant said, 'I ought to kill you.' Is that right?
A. That's what he said.
Q. Are you sure those are the words he used?
A. That's the words he used."

We do not think this recital shows any lack of effective legal representation on behalf of this defendant. Quite the contrary. Defendant was skillfully represented by an experienced public defender whose statements on behalf of his client appear unwarranted only when wrenched from the context of the proceedings in which they occurred. The record demonstrates that at the conclusion of the argument the prosecution and the defense were wrestling for the judge's mind on the issue of intent to murder. The trial court expressed concern about defendant's statement to the victim, ''I'm going to kill you'', and questioned counsel on its significance. At that moment the paramount objective for defense counsel became the neutralization of the damaging testimony uppermost in the mind of the court, testimony which could support his client's conviction for assault with intent to murder. Implicit in the court's questions to counsel was the assumption that the testimony of Mrs. Devezin was true—that the beating had occurred and the threat had been made. In responding to the court's questions defense counsel was not required to reiterate his earlier remark that he assumed the assault for purposes of argument, nor to recall to the court the defendant's story of a drinking party and a bathtub slip, a story which the court had heard a few minutes earlier from defendant himself and about which it had not sought the further aid of counsel. There are times in a case when the stubborn defense of a weak position becomes the equivalent of forensic suicide. What defense counsel had to do in order to effectively represent his client was to face the evidence which had mad the strongest impression on the court and explain it as best he could. Under counsel's duty of candor to the court he could do no less. And in the discharge of his duty to his client he could do no more.

In the light of the court's questions, the public defender could legitimately infer that his main objective was no longer to put out the fire in the cornfield but rather to save the house and barn. Overwhelming evidence sufficient to convict defendant of the crime with which he was charged had been brought before the court. ▇▇▇ Although it would be improper for counsel to enter a plea of guilty to any crime without his client's consent, this does not preclude counsel in argument from realistically appraising the evidence before the court and conceding its force arguendo, even though the concession in effect admits every element of a lesser-included offense. In this case the public defender was called upon to respond to the court's question asking what serious crime was involved. To

answer that no crime was involved, would invite the court to conclude there was no real defense to the charge and that counsel was merely striking an attitude for want of something better. To respond, as counsel did, with the suggestion that a lesser-included offense was involved, a suggestion which did not formally concede his client's guilt, was an attempt to soften the force of the impending blow. In this endeavor the public defender succeeded under circumstances where others might have failed. ■ Squarely in point is *People* v. *Brooks*, 64 Cal.2d 130, 140 [48 Cal.Rptr. 879, 410 P.2d 383], where the court, in rejecting the defendant's claim of ineffective representation in final argument because his counsel assumed he might have lied on the stand, said, "In the heat of a trial, defendant's counsel is best able to 'determine proper tactics in the light of the jury's apparent reaction to the proceedings. Except in rare cases an appellate court should not attempt to second-guess trial counsel. [Citations.]"

We see no similarity between this case and *People* v. *Rogers*, 56 Cal.2d 301 [14 Cal.Rptr. 660, 363 P.2d 892], where counsel, without the formal consent of his client, stipulated that the case would be brought to trial before the court without the possibility of a finding of either first-degree murder or of not guilty; or with *People* v. *Davis*, 48 Cal.2d 241 [309 P.2d 1], where defense counsel had a nervous breakdown during final argument and made a number of damaging admissions to the jury, many of them outside the evidence in the record.

■ Finally, defendant complains that his counsel should have presented a defense of unconsciousness by reason of epilepsy or have pleaded the defense of insanity. Since defendant himself testified he had full recollection of the events of that day, we do not see how defense counsel can be faulted for not suggesting a set of events contradictory to his client's testimony. Nor does the record contain any substantial evidence that defendant was not mentally competent, much less that quantity of evidence which would make this defect so patent that failure to present a plea of insanity became a lack of effective representation.

The defendant was adequately and competently represented by counsel. The judgment is affirmed.

Roth, P. J., and Herndon, J., concurred.