[Crim. No. 11435.   Second Dist., Div. Four.   Aug. 9, 1966.]

THE PEOPLE, Plaintiff and Respondent, v. RICHARD FERMIN CRUZ, Defendant and Appellant.

Dorothy Powell Goldberg, under appointment by the District Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Stephen H. Silver, Deputy Attorney General, for Plaintiff and Respondent.

KINGSLEY, J.—Defendant was charged with a violation of section 11500.5 of the Health and Safety Code (possession of heroin for sale) ; two prior felony convictions, both for burglary, were alleged. After a motion under section 995 of the Penal Code had been made and denied, defendant pled not guilty and denied the priors. Trial by jury was duly waived and the case was submitted on the transcript of the preliminary examination, supplemented by additional testimony on the part of the People and by a stipulation (hereinafter discussed) that defendant be deemed to have testified in a certain manner. The court found defendant guilty of the offense charged and ordered a probation report. Thereafter, pursuant to what was then section 6451 of the Penal Code,[1] the criminal proceeding was suspended and proceedings under the Narcotic Rehabilitation Law were instituted and defendant was committed to the Narcotic Rehabilitation Center. Thereafter he was returned to court by the authorities of that institution, purportedly acting under the provisions of section 6453 of the Penal Code,[2] on two grounds: (1) that defendant was on parole for one of the burglary offenses; and (2) that his past history indicated that he was a serious security problem and that his attitudes in narcotic treatment programs conducted in the prison and parole systems had shown him to be uncooperative. The criminal proceedings were resumed, and the trial court, having before it not only the formal order of the Director of Corrections returning defendant to it but a copy of the evaluation report on which that order was based, made a formal finding as follows: ''The Defendant having been returned by the California Rehabilitation Center as not a fit subject for their program, the Court makes a finding that this was not an abuse of discretion on the part of that Institution in view of the evidence before the court.''

The court then found the two priors to be true as alleged, probation was denied[3] and a state prison sentence was

---

[1] Now section 3051, Welfare and Institutions Code.

[2] Now section 3053, Welfare and Institutions Code.

[3] Defendant expressly waived a supplementary and current probation report.

imposed, to run concurrent with "any other sentence he may be serving." Defendant has appealed.[4]

On this appeal, defendant urges the following contentions: (1) that evidence introduced against him was obtained by the use of a search warrant invalid on its face; (2) that the stipulation as to testimony by defendant, above referred to, was improper because it amounted to a plea of guilty made without the consent or approval of defendant; (3) that defendant has been subjected to double jeopardy by reason of the present sentence entered after the earlier commitment to the Rehabilitation Center; (4) that submission of the case on the preliminary transcript amounted to a denial of due process of law; and (5) that there are inconsistencies in the evidence not satisfactorily explained.

I

The last three of these contentions can be disposed of briefly.

The alleged inconsistencies consist of the fact that, while it was undisputed that both defendant and his companion were properly warned of their constitutional rights to remain silent and to consult counsel, there was divergent testimony as to which officer gave the warnings. Such inconsistencies go only to the weight of the evidence, are for the trial court, and its determination, implicit in its ultimate decision, is binding here.

In support of the fourth contention, counsel relies on the opinion of a federal district court in *Gray* v. *Wilson* (N.D. Cal. 1964) 230 F.Supp. 860. But, subsequent to the filing of appellant's brief, that decision was expressly overruled by the court of appeals (*Wilson* v. *Gray* (9th Cir. 1965) 345 F.2d 282 and certiorari was denied (382 U.S. 919 [86 S.Ct. 288, 15 L.Ed.2d 234]). We conclude that the constitutional validity of a submission in whole or in part on the transcript of a preliminary examination is now settled.

The contention that the nonpunitive commitment for treatment under the Narcotic Rehabilitation Act violates the prohibition against double jeopardy where a defendant is thereafter discharged from that program and sentenced to prison has been rejected, for reasons which we need not repeat here.

[4]At defendant's request, we augmented the record on appeal by examination of the original superior court file, which contains a record of the proceedings above summarized and the affidavit and search warrant hereinafter discussed.

(*People* v. *Reynoso* (1966) 64 Cal.2d 432 [50 Cal.Rptr. 468, 412 P.2d 812].)

## II

At the trial, defendant's principal effort was an attack on the admissibility of evidence against him which had been procured under circumstances hereinafter considered. The trial court rejected the contentions of invalidity of a search warrant and connected issues of unlawful search and seizure. Defense counsel then tendered a stipulation, which was accepted, concerning testimony by defendant. The record shows the following in that connection: "MR. ARTHUR: Your Honor, at this time the defendant would offer the following stipulation, that if the defendant were called to testify and did testify, that he, one, would deny that any contraband at the apartment at which he was living at that time was going to be used for sale, other than a slight amount or amounts for his own use; Secondly, the defendant has offered to stipulate that he was a user of narcotics at that time, and was using the amount that he told Officer Leeds, as related to this Court by Officer Leeds; Thirdly, that he was occupying that particular apartment with another person, a female, and that to his knowledge she was also a user of narcotics at that time. MR. BOON: I am willing to stipulate to the substance of what counsel has said, your Honor. I feel that the way he has worded his offered stipulation has the same defect that it had yesterday. He said, 'if the defendant was called, he would testify so.'

"THE COURT: Maybe he added this other 'and did testify' in the stipulation, did you not,— MR. ARTHUR: Yes. THE COURT: You are offering to stipulate that the defendant has been called, sworn, and so testified; is that your stipulation? MR. ARTHUR: Yes, it is, your Honor. MR. BOON: I will join in the stipulation. THE COURT: And that, if I understood the stipulation correctly, that not any of the contraband was going to be used for sale other than a slight amount for his own use?''

■ Defendant's counsel in this court relies on *People* v. *Rogers* (1961) 56 Cal.2d 301 [14 Cal.Rptr. 660, 363 P.2d 892], and urges that this stipulation amounted to a plea of guilty entered by counsel and not by defendant personally. But in *Rogers,* the stipulation was that the trial court was not to consider either a finding of first degree murder or a finding of not guilty, but was to restrict its deliberation to a choice between murder in the second degree and manslaughter. Clearly, that stipulation amounted to a plea of guilty to one of

the two lesser degrees of homicide and, as such, required the clear personal concurrence of the defendant. But here the stipulation went no further than to admit, on behalf of defendant, certain facts. Whether or not those facts, taken together with other evidence, would support a finding of the offense charged, or of some lesser offense, or of no offense at all, remained a matter for argument and for the exercise of judicial determination.

As the Attorney General points out in the then status of the case, there was before the court evidence which overwhelmingly supported a finding of possession of heroin by defendant for the purpose of sale. The trial counsel could not, if the facts set out in the stipulation were true (and that is not denied), allow his client to take the stand and deny the testimony from the People's witnesses which incriminated him. The attorney then was faced with three choices: (a) to rest without further testimony—a tactic which could have had no result other than a conviction of the offense charged; (b) to place his client on the stand, have him tell his version, necessarily admitting—either on direct or on cross-examination— the facts here stipulated to—a tactic which, if defendant were unprepossessing or otherwise not a "good" witness, might well prejudice him; or (c) to keep his client off the stand, candidly admit as little as was consistent with truth, and hope for some favorable reaction from the court. These are always difficult considerations of trial strategy and tactics[5] and the determination thereof by counsel is part of his professional obligation. We cannot, and do not attempt to second guess him here. (*People* v. *Brooks* (1966) 64 Cal.2d 130, 140 [48 Cal.Rptr. 879, 410 P.2d 383]; and cf. *People* v. *Dickerson* (1966) 242 Cal.App.2d 73 [51 Cal.Rptr. 113].)

### III

For some time, the police had been investigating the activities of defendant and of a woman named Tellez whom they suspected of involvement in the sale of narcotics. On November 23, 1964, Officer Leeds set forth the results of that investigation in an affidavit for a search warrant which he presented to a magistrate of Los Angeles County, and on the basis of which a search warrant issued. We set forth hereinafter the contents of that affidavit. Among the information secured by the police was the fact that defendant was on parole, that he had vio-

---

[5]Consult the discussion of these problems in California Criminal Law Practice (Continuing Education of the Bar Practice Handbook No. 23, 1964), pp. 565-568, §§ 13.28 and 13.29.

lated his parole, and that a warrant for his arrest as a parole violator was outstanding. Armed with the data obtained by the police investigation, and with the search warrant, Officer Leeds, accompanied by three other officers, went to the address set forth in the warrant (which was the residence of Mrs. Tellez), entered and arrested defendant for parole violation. They advised defendant as to his constitutional rights to remain silent and to be advised by counsel. They then searched the premises and discovered a substantial quantity of heroin, cans of milk sugar and of dextrose, and other materials of a type commonly used to "cut" and package heroin for sale. Subsequent analysis of the heroin disclosed that some of it was 20 percent pure and the rest 25 percent—strengths far beyond that of heroin ordinarily used by an addict and approaching (if not exceeding) a lethal strength. After part of the incriminating evidence had been found, Mrs. Tellez was also arrested, and similarly warned of her constitutional rights. When first interrogated, defendant denied all knowledge of the articles found but, as the search disclosed additional evidence, defendant told the officers that all of the heroin was his and made other incriminating statements.[6]

Since defendant's statements, although not obtained in vio-

---

[6]"A.   Yes. Mr. Cruz was shown the bindle and the condom found in the right dresser drawer in the bedroom.

"He stated at this time, 'All the narcotics that you found is mine. The money that you found is also mine. I have saved it.'

"He stated that he had been living here with Christina Tellez for approximately eight months, and that he had been running from his parole officer, and was in violation of parole. That is about the conversation."

*   *   *

"A.   Yes. He stated that all the narcotics that we found in the house was his; that he had paid $300 an ounce for it; that he was using approximately a quarter a day, quarter-ounce a day; that he wasn't peddling very much, just enough to keep up his habit; that he had been running from his parole officer and had been living with Christine Telles at this location, 2770 West 8th Street, for approximately eight months; that he had done a little work off and on, and that the money that was found in the house belonged to him; that he had purchased an ounce and had cut it up into all of the narcotics that we found in the house.

"Oh, and that he didn't feel that any of the narcotics there was very good.

"Q.   Did he tell you it was about an ounce and a half that he had there?

"A.   I believe he stated that there was approximately an ounce and a half in a milk sugar can that was found in the—in a kitchen cabinet.

"Q.   When he told you that he paid $300 an ounce for it, did he tell you how often it could be cut when he bought it?

"A.   Well, he said he had bought an ounce and had cut it into all that we had there. This is all that he said, and he said that it was not very good. This is all he said pertaining to that, which would have been three out of one.''

lation of the *Escobedo-Dorado* rule, were obviously the result of the search and its products, it is not denied that their admission stands or falls with the validity of the search itself.[7]

The Attorney General argues that the search was valid without reference to the search warrant, on the theory that it was a mere incident to defendant's lawful arrest as a parole violator, and that defendant did not adequately present the present contentions concerning the warrant at the trial. We think the latter point is without merit[8] and, since we find the warrant to have been valid, we need not here decide whether or not a search of the type herein made can be regarded as "incident" to an arrest on a charge unrelated to the narcotic traffic, nor how far a parolee may object to a search of premises on which he is found.[9]

We have recently considered, at length, the grounds on which an attack may be made at the trial on the validity of a search warrant, and the constitutionally imposed standards by which such a warrant and the affidavit supporting it must be judged. (*People* v. *Aguilar* (1965) 240 Cal.App.2d 502 [49 Cal.Rptr. 584].) As we there said (at p. 507) :  ▮▮ "The determination to issue, or not to issue, a search warrant is primarily for the magistrate to whom application is made, and a court is authorized to set the warrant aside only if, as a matter of law, the affidavit or deposition on which it is based shows, on its face, that the probable cause required by the Constitution and by section 1525 of the Penal Code is lacking. [Citations.]" ▮▮ And, as we discussed in *Aguilar*, to be sufficient, the affidavit, if it relies only on information from an unidentified informer, must set forth (a) facts from which the magistrate may, himself, determine that the informant was credible, and (b) facts from which it appears that the informer had spoken of his own knowledge and was not merely transmitting hearsay. Unless the affidavit meets

---

[7]Similarly, as we have pointed out above, the stipulation at the trial as to defendant's testimony was impelled by the admission of the evidence obtained by the search; unless the search was valid the People may not rely on the stipulation to support the conviction.

[8]At the opening of the trial, defense counsel set forth, as one of his two defenses, that he proposed to attack the search warrant as being insufficient on its face. A motion to strike the evidence was duly made and argued at length; we do not see how more could be required.

[9]As to the latter point, consult: *People* v. *Gastelum* (1965) 237 Cal. App.2d 205 [46 Cal.Rptr. 743]; *People* v. *Giles* (1965) 233 Cal.App.2d 643 [43 Cal.Rptr. 758]; *People* v. *Hernandez* (1964) 229 Cal.App.2d 143 [40 Cal.Rptr. 100].

these tests, it is sufficient only if the data from an informant is shown to have been adequately corroborated by credible data independently secured. We proceed to test the affidavit herein involved by these rules.

The pertinent portions of the affidavit are set forth in an appendix to this opinion. In addition to setting forth data as to investigations made by the police of defendant, Mrs. Cruz and her husband, and to investigation verifying an informant's statements that Mrs. Cruz resided at the address involved, that she owned the automobile attributed to her, and that defendant had been found driving that vehicle, the affidavit alleged: "Affiant received information from a confidential reliable informant who has furnished information in the past that has resulted in the arrest of 7 persons, 6 for 11500 H&S, and one for violation of parole. These cases are still waiting adjudication in Los Angeles courts. Informant has never given information which proved to be incorrect. On 11-13-64 Informant stated to affiant that a person known as Richard Cruz was living and dealing narcotics from 2770 W. 8th St. That he was living at this location with a person known as Christine Tellez and her son age approx 14 years. That Mrs. Tellez' husband had been arrested at this location approximately one year ago for possession of approximately 4 ounces of heroin. Informant further stated that a telephone call would be made to 382-9435 and he would then talk to Mr. Cruz and order what narcotics was [sic] wanted and Mrs. [sic] Cruz would then set a time and place for a meeting. The meet would be made usually near 6th & Hoover. Any amount of heroin could be ordered and delivered during this transaction."

It is urged that the affidavit was insufficient because (a) the credibility of the unidentified informant was not shown by a mere allegation that he had given information in seven cases, none of which were alleged to have resulted in convictions, (b) the affidavit does not show that the informant spoke of his own knowledge, and (c) the affidavit shows no adequate corroboration of the informant, in that all independently secured data was either consistent with innocence or too remote in time to support a conclusion of present narcotic activity.

We need not consider the matter of independent corroboration since we conclude that the affidavit's allegations relating to the informer were themselves sufficient to support the warrant.

It is true that the affidavit does not show that the informer

had, in the past, been instrumental in procuring narcotic convictions. But while such an allegation is quite commonly relied on to show credibility, it is not the only way in which credibility may be made to appear. ■ We keep in mind that the magistrate was the person to be convinced that the informant was credible and that his determination binds us so long as any reasonable man could have so found. We cannot say that an informant whose data has proved sufficient to induce trained officers to make seven arrests, and who—it is positively alleged—''has never given information which proved to be incorrect'' could not be deemed, by a reasonable magistrate, to be ''credible.'' The magistrate's interest is in whether or not the informant is a truthful person; it is not unreasonable to give credence to an informant who has told the truth on seven similar previous occasions, whether or not policemen and prosecutors were efficient enough to turn his data to successful use.

■ We conclude, also, that the affidavit sufficiently alleged personal knowledge on the part of the informer. We are enjoined to read such affidavits ''in a common sense and realistic fashion.'' (*United States* v. *Ventresca* (1965) 380 U.S. 102, 108 [85 S.Ct. 741, 746, 13 L.Ed.2d 684, 689].) Read in this fashion, we think the magistrate was warranted in concluding that the allegations as to past purchases[10] indicate personal participation by the informant of recent date.

The affidavit being sufficient, the warrant was valid, the evidence obtained by its use was admissible, and that evidence sustains the conviction.

The judgment is affirmed.

Files, P. J., and Jefferson, J., concurred.

A petition for rehearing was denied on August 29, 1966, and the following opinion was then rendered:

THE COURT.—■ In a petition for rehearing, counsel argues that, since both of the trial counsel, and the trial court, were unaware of the subsequent holding (in *People* v. *Butler*

---

[10]''Informant further stated that a telephone call would be made to 382-9435 and *he* would then talk to Mr. Cruz and order what narcotics was [*sic*] wanted and Mrs. [*sic*] Cruz would then set a time and place for a meeting. The meet would be made usually near 6th & Hoover. Any amount of heroin could be ordered and delivered during this transaction. Informant stated Cruz would drive a 1959 Olds, 2dr brn, at times to make delivery.'' Clearly it was not unreasonable to have read ''would'' as referring to past, and not to anticipated future, events.

(1966) 64 Cal.2d 842 [52 Cal.Rptr. 4, 415 P.2d 819]) that an attack on a search warrant might be made at the trial not only as to the legal sufficiency of the affidavit but by way of traverse of the facts therein stated, ''It is impossible to say what testimony could have been turned up had both counsel been proceeding under the rule of the *Butler* case.'' However, an examination of the record discloses that, in spite of objection by the prosecuting attorney, the trial court allowed extensive cross-examination of the officer-affiant; we do not see what further traverse could have been made even if the parties had anticipated *Butler*.

The petition for rehearing is denied.

Appellant's petition for a hearing by the Supreme Court was denied October 4, 1966.

### APPENDIX

''Facts in support of issuance of search warrant: Your affiant has been a police officer for 13 years and has been assigned to Narcotic Division for 7 years. Affiant has made hundreds of arrests for possession, possession for sale, sale and use of narcotics. Affiant has testified in court as an expert in the field of narcotics as to possession, use and the paraphernalia used in both instances. Affiant received information from a confidential reliable informant who has furnished information in the past that has resulted in the arrest of 7 persons, 6 for 11500 H&S, and one for violation of parole. These cases are still waiting adjudication in Los Angeles courts. Informant has never given information which proved to be incorrect. On 11-13-64 Informant stated to affiant that a person known as Richard Cruz was living and dealing narcotics from 2770 W. 8th St. That he was living at this location with a person known as Christine Tellez and her son age approx 14 years. That Mrs. Tellez' husband had been arrested at this location approximately one year ago for possession of approximately 4 ounces of heroin. Informant further stated that a telephone call would be made to 382-9435 and he would then talk to Mr. Cruz and order what narcotics was [*sic*] wanted and Mrs. [*sic*] Cruz would then set a time and place for a meeting. The meet would be made usually near 6th & Hoover. Any amount of heroin could be ordered and delivered during this transaction. Informant stated Cruz would drive a 1959 Olds, 2dr brn, at times to make delivery. Also the informant stated Cruz was probably wanted for violation of parole. Affiant checked phone number 382-9435 and found it registered to Christine Tellez at

the above address, 2770 W. 8th. A check of the mail box at this location found it to have the name Mrs. Tellez and family on the outside of the box. Affiant checked license number LYE 754 and registration showed registered owner as Christine Tellez at 2770 W. 8th St. Affiant and partner, Officer Maga were the officers who participated in the arrest of the husband of Christine Tellez, Espiranzo Tellez, on 1-23-64 when Tellez was arrested for violation of parole and possession of heroin for sale. Affiant and officers found approximately 100 grams (4 ounces) at 2770 W. 8th St., the location of arrest). At this time Christine Tellez and her son Peter were residents at this address. Officers observed the above vehicle LYE 754, 1959 Olds, 2dr brn leave above location with one male mex. driving. Vehicle was stopped and driver identified as Richard Fermia Cruz and the vehicle as beloning to Christine Tellez. This information was relayed to affiant by Sergeants Evans and Olson whose information the affiant has found in the past to be reliable. R&I was checked at Los Angeles Police Dept. and affiant found Richard Fermia Cruz AKA Richard Medina Cruz, LA #148633-C to have an arrest record for violation of State Narcotic Act as a juvenile, violation of State Narcotic Act in 1952 found in danger of leading immoral life, LA. County Juvenile Court February 1953. Sent to Youth Authority. Arrested for burglary 11-8-56, sentenced to 5 years probation, 6 months county jail. Arrested 6-18-57 suspicion burglary, 10-15-57, State Prison. 10-29-57 convicted of burglary from L.A. County 6 months to 15 years, parole 4-29-59. 4-17-61 CTA & 10851 VC, 360 days County Jail, count 1 dismissed. 11-19-62 violation of parole, returned to parole 4-20-64 tent. discharge date 3-1-70. R&I further showed that there was at present a want for violation of parole by Reg. Admin. L.A. reference B.S. Griggs (66 SAC. SC 5) Also Officers checked the record of Christine Tellez and found her to be convicted of suspicion of narcotic act 11721 H&S, 90 days, suspicion of narcotics 12-9-57. 2-4-58 committed CIW, 6 months to 10 years. Paroled 5-5-60, tent. discharge 2-17-63.''