**B. J. RHAY, Superintendent, Washington State Penitentiary, et al., Appellant,**

v.

**James E. BROWDER, Appellee.**

**No. 19466.**

United States Court of Appeals Ninth Circuit.

Feb. 5, 1965.

**346**

John J. O'Connell, Atty. Gen., of Washington, Stephen C. Way, Asst. Atty. Gen., of Washington, Olympia, Wash., for appellant.

Anthony Arntson, Yakima, Wash., for appellee.

Charles O. Carroll, Pros. Atty. for King County, James E. Kennedy, David W. Soukup, William L. Paul, Jr., Deputy Pros. Attys. for King County, Seattle, Wash., for amicus curiae, Prosecuting Attorney, King County.

Before MERRILL, DUNIWAY and ELY, Circuit Judges.

DUNIWAY, Circuit Judge:

Appellant is the superintendent of the Washington State Penitentiary, and the appeal is from an order of the district court granting a writ of habeas corpus at the instance of appellee Browder, a prisoner. We reverse.

Browder was convicted in the Washington state court on six counts of forgery on October 6, 1961. The record in the state trial shows that Browder passed six forged checks, one to a jewelry store on November 27, 1960, one to a tavern on November 30, one to an automobile towing company on December 1, and three to the same tavern on December 1. All of these checks were signed with the name "Byron D. Hunt." Hunt testified that these were his "personalized" checks, that he lost his check book on or about November 22, 1960, that he had not authorized anyone to write his name on the checks or to draw on his account, that he did not know Browder, and that he had not authorized Browder to sign Hunt's name on Hunt's checks. Browder took the stand. He testified that early in November he became acquainted with Hunt, went with Hunt to the latter's apartment, and that the two there engaged in a prolonged drinking bout. He said that Hunt offered him a job. He also said that Hunt got so drunk that he could not write his own name, and that Hunt authorized him to write Hunt's name on Hunt's checks and cash them. He claimed that he was authorized to cash Hunt's checks up to a total of $300. He took Hunt's check book with him when he left Hunt's apartment. He said that Hunt's name, signed on each of the

six checks was in his (Browder's) handwriting.

In the course of instructing the jury, the trial court gave the following instruction: (No. 7½)

"You are instructed that the adoption of another name or an assumed name is permissible if the purpose involved is an honest one. The burden is upon the defendant to show that he adopted the name for an honest purpose, or that he had used it for any length of time, or for a purpose other than to perpetrate the crime of forgery as charged in this case."

The court also instructed:

"You are instructed that if you find that Byron D. Hunt gave the defendant authority to sign his name to the checks referred to in the amended information, then defendant is not guilty of forgery."

The court had previously instructed the jury as to each of the six counts separately, regarding the necessary elements of the offense. Each such instruction was prefaced: " * * * you must be convinced by legal and competent evidence beyond a reasonable doubt that * * *." After stating the elements of the offense, the instruction continued, in each case, by saying: "If you find from the evidence admitted in this case that the state has proved beyond a reasonable doubt the foregoing elements of the crime charged" then the jury should convict, but that if the evidence "fails to establish beyond a reasonable doubt one or more of the foregoing elements," then the jury should acquit.

It also instructed, near the end of its charge, and after giving instruction No. 7½:

"You are instructed that the law presumes a defendant to be innocent until proven guilty beyond a reasonable doubt. This presumption is not a mere matter of form, but it is a substantial part of the law of the land, and it continues throughout the entire trial and until you have found that this presumption has been overcome by the evidence beyond a reasonable doubt."

Browder's counsel excepted to instruc-No. 7½ in the following language:

"Defendant excepts to Court's Instruction No. 7½ on the ground that it constitutes a comment upon the evidence and assumes the existence of a fact which is in dispute, the question of whether or not the defendant ever adopted the name of another. We feel this will be highly prejudicial to the jury and is therefore improper."

On appeal to the Washington Supreme Court, Browder contended that instruction No. 7½ unlawfully shifted the burden of proof to him. As to this, the Supreme Court of Washington said:

"The exception to the instruction did not direct the trial court's attention to any contention that there was an improper statement of the burden of proof; neither was such claim made at any time during the trial or on the motion for a new trial. Under such circumstances, we cannot consider the defendant's assignment of error seeking to raise that issue. Miller v. Staton (1961), 58 Wash.2d 879, 365 P.2d 333; Owens v. Anderson (1961), 58 Wash. 2d 448, 364 P.2d 14; State v. Cogswell (1959), 54 Wash.2d 240, 339 P.2d 465; Patterson v. Krogh (1957), 51 Wash.2d 73, 316 P.2d 103.; Peerless Food Products Co. v. Barrows (1957), 49 Wash.2d 879, 307 P.2d 882; and State v. Lyskoski (1955), 47 Wash.2d 102, 287 P.2d 114." (State v. Browder, 1963, 61 Wash.2d 300, 301–302, 378 P.2d 295, 296–297)

The district court held that the instruction "was in fact erroneous and did transfer the burden of proving innocence upon the petitioner, in violation of his constitutional right of due process." It ordered that unless Browder be given a new trial by the state within ninety days, he should be discharged.

We think that the court was in error.

The state urges that Browder failed to exhaust his state remedies, citing our decision in Chavez v. Dickson, 9 Cir., 1960, 280 F.2d 727, 733–734 where we held:

> "State remedies will not be deemed to have been exhausted within the meaning of 28 U.S.C.A. § 2254 if the failure to obtain a final state adjudication was due to inexcusable nonconformity with state procedural requisites. No reason was offered in the district court or in this court as to why appellants should be excused for their failure to make timely objection in the state trial court to the questioned remarks of the prosecution and trial judge."

We there cited: Brown v. Allen, 344 U.S. 443 at page 487, 73 S.Ct. 397, 97 L.Ed. 469; Application of Hodge, 9 Cir., 262 F.2d 778–782; Daugharty v. Gladden, 9 Cir., 257 F.2d 750, 756. The state also urges that, because the Supreme Court of Washington did not reach the question on appeal, Browder could have raised it by a petition to the Washington court for a writ of habeas corpus. We suspect that this would have been an exercise in futility. This is because we think that the Washington court would have applied the same principles as we applied in Chavez v. Dickson, supra, and denied the writ. We do not rest our decision on this ground. (See Brown v. Allen, supra).

We do think, however, that there has been either "an inexcusable nonconformity with the state procedural requisites" (Chavez v. Dickson, supra) or a waiver of the point by failing to take proper objection to the instruction, and that on either basis the district court should have denied the writ without reaching the merits of Browder's constitutional claim.

In Henry v. State of Mississippi, 85 S.Ct. 564, decided January 18, 1965, the Supreme Court seems to equate the "adequate state procedural ground" rule with waiver. (Footnote 3, p. 567) We think that if ever a procedural rule does "serve a legitimate state interest" (Henry v. State of Mississippi, supra, p. 567), the rule applied by the Washington court does. It has been in effect at least since 1895. (State v. Williams, 1895, 13 Wash. 335, 340, 43 P. 15, 16) It has been applied ever since. (See the more than forty cases collected in 4A West's Washington Digest Annotated, Criminal Law, ⊖ 1056(1)). It is comparable to Rule 30, F.R.Crim.Proc., which has governed federal trials and appeals since the Supreme Court adopted it in 1941, and has been applied in hundreds of cases by every Court of Appeals in the land, including this one. It has the same salutary purpose as Rule 30—to enable the judge to correct the error before the case is submitted to the jury, thus avoiding unnecessary appeals and new trials. Herzog v. United States, 9 Cir., 1956, 235 F.2d 664, 667; Lyons v. United States, 9 Cir., 1963, 325 F.2d 370, 373. For this reason we have held that "painstaking compliance" is necessary. (Brown v. United States, 9 Cir., 1955, 222 F.2d 293) We think that a state court is just as entitled to adopt and to enforce such a rule as are the federal courts. We note that most states appear to apply a similar rule. (See 4 C.J.S. Appeal and Error § 334, pp. 1083–1091, citing cases from 36 states; 5 Am.Jur.2d, Appeal and Error, § 623, p. 81, citing cases from 21 states) If, as we have held, failure to comply with Rule 30 deprives a federal defendant of the right to claim that an instruction is erroneous (Noah v. United States, 9 Cir., 1962, 304 F.2d 317, 319; Gilbert v. United States, 9 Cir., 1962, 307 F.2d 322, 326; Claypole v. United States, 9 Cir., 1960, 280 F.2d 768, 770; Pool v. United States, 9 Cir., 1958, 260 F.2d 57, 66), how can we say, on collateral attack, that the state courts cannot apply the same rule?

For many years, the Supreme Court has been steadily enlarging the scope of the guarantee of the right to counsel contained in the Sixth Amendment, and always on the grounds so eloquently stated in Powell v. State of

Alabama, 1932, 287 U.S. 45, 68–69, 53 S.Ct. 55, 64, 77 L.Ed. 158.

"The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel. Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defense, even though he have a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him. Without it, though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence. If that be true of men of intelligence, how much more true is it of the ignorant and illiterate, or those of feeble intellect. If in any case, civil or criminal, a state or federal court were arbitrarily to refuse to hear a party by counsel, employed by and appearing for him, it reasonably may not be doubted that such a refusal would be a denial of a hearing and, therefore, of due process in the constitutional sense."

See also Gideon v. Wainwright, 1963, 372 U.S. 335, 344–445, 83 S.Ct. 792, 9 L.Ed. 2d 799; Douglas v. People of State of California, 1963, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811. We are in hearty agreement with these views. And we think that it inevitably flows from them that, when a defendant has counsel, as Browder did, it is counsel's decision on a question such as is here involved that must control. Counsel is the manager of the lawsuit; this is of the essence of the adversary system of which we are so proud. In the nature of things

he must be, because he knows how to do the job and the defendant does not. That is why counsel must be there.

We think that this is a clear case for the application of the waiver doctrine mentioned in footnote 3 to Henry v. State of Mississippi, supra. Here, "the state rule is a reasonable one and clearly announced to defendant and counsel." We find nothing in Henry that would require that the district court hold a hearing and receive evidence on the question of waiver in a case such as this. We hold that Browder's point was effectively waived.

We add that, if we are in error as to this, the federal constitutional question raised is so clearly without merit as to border on the frivolous. This court does not yet sit, and we hope it will never have to sit, as an appellate court to review all of the errors that may be claimed to have been committed in the course of state criminal trials. We have repeatedly held that a defendant is not entitled to an error-free trial, and that the writ of habeas corpus is not a substitute for an appeal. (See e. g. McGee v. Eyman, 9 Cir., 1962, 310 F.2d 230). We know of no case that holds that a defendant is deprived of due process by a rule—including an instruction to a jury—that shifts to a defendant either the burden of going forward or the burden of proof as to an issue brought into the case as an element of the defense when the state has made out a prima facie case.

The Supreme Court has sustained an instruction which told the jury, in a murder case, that proof of defendant's possession of property of the man killed raised a presumption of guilt, and required the defendant "to account for it, to show that, as far as he was concerned, that possession was innocent and was honest." (Wilson v. United States, 1896, 162 U.S. 613, 619–620, 16 S.Ct. 895, 897, 40 L.Ed. 1090) Section 174, Title 21 United States Code, permits a jury to convict a defendant of knowingly importing narcotics unless he explains his possession of them to the satisfaction of the

jury. This has been upheld by the Supreme Court (Yee Hem v. United States, 1925, 268 U.S. 178, 45 S.Ct. 470, 69 L.Ed. 904) and repeatedly by this court (e. g. Hunter v. United States, 9 Cir., 1964, 339 F.2d 425. There are innumerable other rules of a comparable nature, most of them judge made, and it has never, so far as we know, been suggested that any of them deprives the defendant of due process of law, so long as there is a reasonable basis for the rule. (For examples, see 22A C.J.S. Criminal Law §§ 571–578, pp. 315–327, and the many cases, federal and state, cited in the footnotes.)

The order is reversed and the trial court is directed to dismiss the proceeding and remand Browder to the custody of appellant.