**Lawrence E. WILSON, Warden of San Quentin Prison, Appellant,**

v.

**Frederick GRAY, Appellee.**

**No. 19380.**

United States Court of Appeals
Ninth Circuit.

April 21, 1965.

Rehearing Denied May 26, 1965.

Thomas C. Lynch, Atty. Gen. of Cal., Albert W. Harris, Jr., Robert R. Granucci, and Michael J. Phelan, Deputy Attys. Gen. of Cal., San Francisco, Cal., for appellant.

Marshall W. Krause, San Francisco, Cal., for appellee.

Before HAMLEY, HAMLIN and DUNIWAY, Circuit Judges.

HAMLIN, Circuit Judge.

Appellee, Frederick Gray, is an inmate at San Quentin Prison, California. On April 3, 1962, the appellee was charged by information in the Superior Court of the State of California in and for the County of Los Angeles with assault with a deadly weapon, a violation of section 245 of the California Penal Code. On April 12, 1962, the appellee, represented by his attorney, a deputy public defender of Los Angeles County, entered a plea of not guilty. When the case came on for trial in the Superior Court of Los Angeles County, appellee, represented by his attorney, personally waived his right to a trial by jury. In appellee's presence and without any objection on the part of appellee, his attorney stipulated that the matter be heard on the transcript of the preliminary hearing, each side retaining the right to produce additional evidence at the trial. However, at the trial neither side produced any further evidence. Appellee was found guilty of assault by force likely to produce great bodily harm, a lesser included offense of the crime charged in the information. On June 1, 1962, appellee's motion for probation was denied, and he was sentenced to state prison for the term prescribed by law. Throughout these proceedings, appellee was on probation for a similar offense of which he had been convicted on June 30, 1961. Immediately after the sentencing proceedings for the more recent offense, a hearing was held on the revocation of probation as to the prior offense. The Superior Court found appellee in violation of probation and sentenced him to imprisonment in the state prison for a term to run concurrently with that previously imposed for the more recent offense.

On November 6, 1963, appellee filed an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 et seq. in the United States District Court for the Northern District of California, Southern Division. In substance, appellee alleged in his petition for the writ of habeas corpus that he was convicted in violation of his constitutional rights in that the submission of the case on the preliminary transcript by his attorney without his express personal waiver constituted a denial of his right to cross examine and confront prosecution witnesses. On June 17, 1964, after a full evidentiary hearing, the district court granted the writ of habeas corpus, remanding the appellee to the Superior Court for the County of Los Angeles.[1] Notice of appeal was filed and a certificate of probable cause issued out of this court on June 26, 1964. This court has jurisdiction to hear the instant appeal under 28 U.S.C. § 2253.

The sole issue on appeal is whether the district court erred in granting appellee's petition for a writ of habeas corpus. A threshold inquiry, however, is whether the district court had jurisdiction to grant the writ of habeas corpus. Appellant contends that the district court

1. Gray v. Wilson, 230 F.Supp. 860 (N.D.Cal.1964).

did not have jurisdiction because the appellee was then serving a sentence under a separate valid judgment and commitment based upon the revocation of probation for his previous offense. It is well settled that a federal court may not issue a writ of habeas corpus to set aside an invalid judgment and commitment where the petitioner is also held in custody under a lawful judgment and commitment. McNally v. Hill, 293 U.S. 131, 55 S.Ct. 24, 79 L.Ed. 238 (1934); Lee v. Swope, 9 Cir., 225 F.2d 674 (1955) and cases cited therein. The rationale underlying this rule was aptly stated by the Supreme Court: "There is no warrant in * * * the writ for its use to invoke judicial determination of questions which could not affect the lawfulness of the custody and detention." McNally v. Hill, supra at 137, 55 S.Ct. at 27. In short, the writ of habeas corpus is only available in situations where discharge from custody will result from the granting of relief. Id. Consistent with this proposition, a limited exception to the rule announced in McNally v. Hill has been carved out where probation or parole under a prior conviction was revoked solely because of the entry of a subsequent conviction. Ex parte Hull, 312 U. S. 546, 61 S.Ct. 640, 85 L.Ed. 1034 (1941). In such cases a state prisoner may be discharged on a writ of habeas corpus challenging the second conviction without attacking the first conviction. Id. The district court found that the Superior Court revoked appellee's probation as a result of his conviction for the second offense.[2] We do not agree. The record of what transpired in the state court is set out below.[3] This record

2. Gray v. Wilson, 230 F.Supp. at 861.

3. The matter of probation for the second offense (256751) came on for hearing at the same time as the hearing for revocation of probation on the first offense (241385).

"LOS ANGELES, CALIFORNIA, FRIDAY, JUNE 1, 1962. 10:30 a.m.

"THE COURT: People versus Frederick Gray, 256751.

"MR. KILBRIDE: Mr. Gray.

"THE COURT: And 241385. 241385 is here on violation of probation hearing.

"The record may reflect the defendant is present with his counsel. Have you read the Probation Officer's report?

"MR. KILBRIDE: Yes, I have, your Honor.

* * * * *

"THE COURT: All right. In case number 256751 is arraignment for judgment and sentence waived?

"MR. KILBRIDE: Yes.

"THE COURT: Is there any legal cause to show why the judgment of this Court should not now be pronounced and sentence imposed?

"MR. KILBRIDE: There is no legal cause. My client wishes me to address the Court, though.

"THE COURT: You may do so.

"MR. KILBRIDE: Your Honor, the defendant has asked me on more than one occasion to express to the Court that, number one, he is most remorseful for this behavior. He admits that it probably occurred although he specifically wasn't even able to remember it and is aware that the entire problem as far as maintaining good behavior centers around alcohol and as your Honor may be aware the family says the same thing, that when he is sober he is fine and when he drinks he seems to be like another person, and he has asked me to tell the Court this latest escapade has bore upon him more strongly than his previous difficulties. If given the opportunity, he is determined to stay dry and he believes that he can do it and he promises that he will join the Alcoholics Anonymous and attend church regularly and make every effort to stay off of drink.

* * * * *

"THE COURT: You apparently, Mr. Gray, get into these fracases with your wife and your actions are very violent and then you don't remember apparently according to your statement. I have read your letter. I have read everything about you and I have read the psychiatrist's report that I appointed, eight pages long.

"THE DEFENDANT: If I get out of this and join Alcoholics Anonymous, I know I can't drink now. I realize that.

"THE COURT: It appears that you need some help that you can't possibly get by yourself and this couldn't possibly be available by probation because you have already been on probation June 30, 1961, and in that other case the Court took cognizance, I read the whole file, took cognizance of what you said

shows that not only the conviction of appellee was taken into consideration, but also taken into consideration were all of the other relevant facts as shown by the probation officer's report, the eight-page psychiatrist's report, the letter of the appellee to the judge, the fact that appellee, contrary to the restrictions of his probation, had been drinking, that appellee had an alcoholic wet brain, and that he needed to be placed where he would not have access to alcohol and where he would receive medical attention, and the other matters as shown in the record.

there, that you would behave. I don't think that you can do it by yourself actually. You were not supposed to drink yet here you are back here on a very serious case.

"I know your family would like to have you back. Your wife could have died and the doctor's report indicates that you are in need of considerable help. Couldn't possibly do it alone or even with the help of your family.

"Anything further?

"MR. KILBRIDE: Nothing further, your Honor.

"THE COURT: All right. The record may reflect that the Court has received, read and considered the Probation Officer's report. You have to be placed somewhere where that brain of yours is going to have all of the alcohol taken out of it and then I feel maybe that you will be able to rehabilitate yourself after that. Where I am going to send you they have Alcoholics Anonymous programs and it will be up to you at that time and that place to get on that program and help yourself.

"All right. The Court has read the report of Dr. Marcus Crahan filed with the Court on May 29, 1962, which he recommends be made a part of the file which ultimately will be forwarded to the Adult Authority.

"Probation is denied. The defendant is sentenced to imprisonment in the State Prison of the State of California for the term prescribed by law. In the execution and enforcement of this sentence the defendant is remanded to the custody of the Sheriff of Los Angeles County to be by him delivered into the custody of the Director of Corrections at the California Institution for Men at Chino, California.

"We will now take up the other case, 241385, which is a hearing on violation of probation. You have read the Probation Officer's report relative to that case?

"MR. KILBRIDE: Yes, your Honor.

"THE COURT: By reason of the commission by the defendant of the offense as to which he was convicted in case number 256751 and as to which he has just been sentenced to the State Prison, the Court finds the defendant in violation of probation in this case 241385 and revokes the order heretofore made granting the defendant probation. Is the defendant ready for arraignment for judgment and sentence?

"MR. KILBRIDE: Yes, your Honor.

"THE COURT: Is arraignment for judgment and sentence waived?

"MR. KILBRIDE: It is, your Honor.

"THE COURT: Is there any legal cause to show why the judgment of this Court should not now be pronounced and sentence imposed?

"MR. KILBRIDE: There is none, your Honor.

"THE COURT: Your remarks, Mr. Kilbride which were made in case number 256751 on behalf of the defendant and the Court's remarks relative to the Probation Officer's report and the report of Dr. Marcus Crahan heretofore referred to by the Court should stand at this point and be included.

"MR. KILBRIDE: Thank you, your Honor.

"THE COURT: The Court having read and considered the Probation Officer's report, also having read the report of Dr. Marcus Crahan heretofore appointed by the Court to make a psychiatric examination of the defendant, probation having been revoked, the defendant is now sentenced to imprisonment in the State Prison of the State of California for the term prescribed by law. The sentence in this case is to run concurrently with the sentence just imposed in case number 256751.

\* \* \* \* \*

"And I trust, Mr. Gray, that you will do everything to help yourself there. There will be facilities that will be made available for you and you've got to get rid of this condition in your brain. According to the doctor you have an alcoholic wet brain. We had an encephalogram run of you at considerable expense as part of the psychiatric examination. There isn't any question but that you need help and care. I believe you will get it where I have sent you. You may disagree with me but this is my own considered opinion. You are remanded to the custody of the Sheriff."

Upon careful consideration of the relevant portions of the record in this case, we are of the opinion that the record clearly indicates that the Superior Court's decision revoking appellee's probation was predicated upon the appellee's conduct, only a portion of which constituted the offense of which he was charged and for which he was convicted, and not solely by reason of his conviction for that offense. Therefore, we hold that the district court's finding in this regard was "clearly erroneous." Rule 52(a), Federal Rules of Civil Procedure; United States v. United States Gypsum Co., 333 U.S. 364, 394–395, 68 S.Ct. 525, 92 L.Ed. 746 (1948).

■ Since, under the circumstances of this case, the commitment for the prior offense is valid and the two sentences appellee is presently serving are concurrent, discharge will not follow the granting of relief from the commitment for the second offense. We hold, therefore, that the district court did not have jurisdiction to grant appellee's writ of habeas corpus. McNally v. Hill, 293 U.S. 131, 137, 55 S.Ct. 24, 79 L.Ed. 238 (1934); Lee v. Swope, 225 F.2d 674 (9th Cir. 1955) and cases cited therein.

■ On a separate and independent ground we also believe the decision of the district court should be reversed. The only claim asserted by the appellee in his petition for the writ of habeas corpus considered by the district court under the commitment for the second offense was that the appellee did not personally waive his right to cross examination and confrontation of the prosecution's witness. It was on the basis of this allegation that the district court granted the writ of habeas corpus. The district court held that the right of an accused to cross examine and confront prosecution witnesses in a state criminal trial was guaranteed by the due process clause of the Fourteenth Amendment; that the waiver of this right must be made by the accused personally rather than by his attorney; and that the appellee had not personally waived this right.[4] We agree that the right of an accused to cross examine and confront prosecution witnesses in a state criminal trial is an essential ingredient of a fair trial. As such it is necessarily a right embodied in the due process clause of the Fourteenth Amendment. Pointer v. State of Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923, decided April 5, 1965; Cf. Willner v. Committee on Character, etc., 373 U.S. 96, 83 S.Ct. 1175, 10 L.Ed.2d 224 (1963);[5] see Brubaker v. Dickson, 310 F.2d 30 (9th Cir. 1962).[6] But we do not agree that in all cases the waiver of this right must be made by the accused personally rather than by his counsel. It has been consistently held that the accused may waive his right to cross examination and confrontation and that the waiver of this right may be accomplished by the accused's counsel as a matter of trial tactics or strategy. E. g., Diaz v. United States, 223 U.S. 442, 32 S.Ct. 250, 56 L.Ed. 500 (1912); Cruzado v. People of Puerto Rico, 210 F.2d 789 (1st Cir.1954); Fukunaga v. Territory of Hawaii, 33 F.2d 396 (9th Cir. 1929); United States v. Meyers, 226 F.Supp. 343 (E.D.

---

4. Gray v. Wilson, 230 F.Supp. 862–867.

5. In Willner v. Committee on Character, the Supreme Court held that due process requires that a state bar association permit an applicant to cross examine and confront the witnesses against him in an administrative hearing to determine his fitness for the practice of law. 373 U.S. 96, 83 S.Ct. 1175, 10 L.Ed.2d 224 (1963).

6. In Brubaker v. Dickson we reiterated the applicable standard:
"'The requirement of the Fourteenth Amendment is for a fair trial'; the due process clause 'prohibits the conviction and incarceration of one whose trial is offensive to the common and fundamental ideas of fairness and right.'" 310 F.2d at 37.
Compliance with this standard required that the appellee be accorded the right to confront and cross examine the prosecution's witnesses. Cf., Willner v. Committee on Character, supra at n. 5.

Pa.1964).[7] Here, in the presence of appellee and without any objection on his part, his counsel stipulated that the matter be heard on the transcript of the preliminary hearing, each side retaining the right to produce additional evidence at the trial. The record clearly indicates that under the circumstances of the case as they existed at the time of trial, the decision of appellee's counsel to enter the stipulation was both wise and prudent, a decision deliberately made as a matter of trial tactics and strategy.[8] We hold that under the circumstances of this case the

7. That this procedure is proper was recognized by the district judge when he stated:

"The accused may, however, waive his right to cross examination and confrontation. Diaz v. United States, 223 U.S. 442 [32 S.Ct. 250, 56 L.Ed. 500]. Normally, waiver is made by counsel as to particular witnesses, since as every trial lawyer knows, it is just as important to know when not to cross examine as it is to know how to cross examine. In such matters the accused must accede to his lawyer's judgment. As a practical matter a reviewing court can not find a denial of the constitutional right to cross examination merely on the basis of an error in trial tactics unless the error is so gross as to constitute a denial of adequate and effective assistance of counsel. Brubaker v. Dickson, 310 F.2d 30 (9th Cir. 1960)." Gray v. Wilson, 230 F. Supp. at 862.

8. The transcript of the preliminary examination consisted only of the testimony of one witness, the wife of the appellee who was the victim of appellee's assault with an ice pick. Her testimony, direct and cross, comprises only seven short pages. The direct examination was as follows:

"BY MR. CABALLERO:

"Q Mrs. Gray, what is your home address and telephone number?

"A 234 East 54th Street and I don't have a telephone.

"Q You are a housewife?

"A Yes.

"Q Were you living at that address on March 8, 1962?

"A Yes.

"Q That is here in the City and County of Los Angeles, is it?

"A Yes.

"Q Now, on that date at approximately 7:50 p.m. or around 7:30 at night were you at home?

"A Yes.

"Q Did you see the defendant, the defendant sitting at the counsel table here ——is that your husband (indicating)?

"A Yes.

"Q Did he come over to the house about 10 minutes to 8:00 that night?

"A Yes.

"Q And what happened?

"A He asked me did I get him a package of cigarettes and I told him no, I didn't have the money, I had to work with his money, and they paid us off with a check and I didn't have any money there.

"Q What did he say or do then?

"A We argued and then he stuck me.

"Q What did he stick you with?

"A An ice pick.

"Q Where did he stick you with the ice pick?

"A In the arm here (indicating).

"MR. CABALLERO: Indicating the right arm near the wrist, for the record.

"THE COURT: The record may so show.

"BY MR. CABALLERO:

"Q Where else did you indicate?

"A Here (indicating).

"MR. CABALLERO: Indicating above the left wrist.

"BY MR. CABALLERO:

"Q Anywhere else?

"A Here (indicating).

"MR. CABALLERO: And in the stomach.

"THE COURT: Let the record show both those locations.

"BY MR. CABALLERO:

"Q Were you taken to the hospital?

"A Yes, I was.

"Q In an ambulance?

"A Yes.

"Q And how long did you stay in the hospital?

"A Three days.

"MR. CABALLERO: You may cross examine."

The transcript of the testimony of this witness was far more innocuous than the appearance of that witness before the state judge could ever have been. There is no showing of intent, of malice, of how drunk the defendant was, of former conduct including drinking, of any former attack upon her, of the extent of the wounds inflicted on the victim, of any medical testimony in relation thereto, or of many other facts that a Superior Court judge would have insisted upon knowing if the trial was before him. It would seem that any trial lawyer would have been well pleased if the Superior

appellee's right to cross examine and confront prosecution witnesses was effectively waived by his counsel.[9] Nor is this result inconsistent with Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). There, the Supreme Court stated the following guidelines for determining whether there has been an effective waiver of a federal constitutional right:

"The classic definition of waiver enunciated in Johnson v. Zerbst, 304 U.S. 458, 464 [58 S.Ct. 1019, 1026, 82 L.Ed. 1461] * * * —'an intentional relinquishment or abandonment of a known right or privilege' —furnishes the controlling standard. If a habeas applicant, after consultation with competent counsel or otherwise, understandingly and knowingly forewent the privilege of seeking to vindicate his federal claims in the state courts, whether for strategic, tactical, or any other reasons that can fairly be described as the de-

liberate by-passing of state procedures, then it is open to the federal court on habeas to deny him all relief if the state courts refused to entertain his federal claims on the merits—though of course only after the federal court has satisfied itself, by holding a hearing or by some other means, of the facts bearing upon the applicant's default. * * * [citing authority]. At all events we wish it clearly understood that the standard here put forth depends on the considered choice of the petitioner. * * * [citing authority]. *A choice made by counsel not participated in by the petitioner does not automatically bar relief.*" Id. at 439, 83 S.Ct. at 849. (Emphasis added).

Implicit in this statement is the notion that in the proper circumstances counsel for the accused may effectively waive certain rights of the accused during the course of his representation of the ac-

---

Court judge would only have· this transcript before him rather than the gory details given by witnesses in open court. This is a matter upon which a lawyer's judgment is far better than a defendant's.

Moreover, there can be no question of the competency of counsel in this case. Appellee's counsel was a member of the public defender's office in Los Angeles County. This court has had occasion in the past to comment on that office when we said in Brubaker v. Dickson, "The reputation of the Office of Public Defender of Los Angeles County and of trial counsel in this case negated any possibility that available defenses were deliberately withheld to win delay and to give accused two chances to prevail." 310 F.2d at 39. Indeed, in this case the district judge had occasion to make the following comment:

"Before concluding, the Court wishes to note for the record that its findings are not in any way intended to cast aspersions upon Mr. Kilbride's integrity, truthfulness or professional ability; nor does the Court wish to imply that he was not acting in the best interests of his client by concentrating on the sentencing problem rather than the question of guilt or innocence. In light of petitioner's own tacit admissions of guilt, his lack of protestation of innocence, and the overwhelming evi-

dence of guilt in the record before the Court, Mr. Kilbride had little choice but to concentrate on the sentencing problem." Gray v. Wilson, 230 F.Supp. at 868.

9. We are not basing our holding on the testimony that the appellee verbally consented to the submission of the case on the transcript. However, the record discloses that appellee's counsel, a member of the public defender's office for approximately ten years, testified that he had two conferences with appellee in prison prior to the date of trial and that in these conferences the appellee agreed with the procedure of submitting the case on the transcript of the preliminary examination. That these jail visits were made is corroborated by two written visitor's slips from the jail which were admitted in evidence showing that counsel had twice visited the appellee in jail prior to the date of trial.

As opposed to this evidence, the appellee denied that he had ever seen Mr. Kilbride prior to the date of trial and he testified that on the day of trial the only words spoken to him by Mr. Kilbride were, "You are going to the penitentiary." On the basis of this record it would seem to us that a finding that the appellee was not telling the truth in this regard would not be unreasonable.

cused and as a matter of trial strategy or tactics. This proposition has consistently been affirmed and applied by this court. See, e. g., Brubaker v. Dickson, 310 F.2d 30, 37 (9th Cir. 1962); Rhay v. Browder, 342 F.2d 345, decided February 5, 1965 (9th Cir.) (Duniway, J.). Moreover, any doubts regarding the validity of this proposition were erased in the recent case of Henry v. State of Mississippi, 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408, decided January 18, 1965. There, the Supreme Court stated:

"If either [tactical] reason motivated the action of petitioner's counsel, and their plans backfired, *counsel's deliberate choice of strategy* would amount to a waiver binding on petitioner and would preclude him from a decision on the merits of his federal claim either in the state courts or here. Although trial strategy adopted by counsel without prior consultation with an accused will not, *where the circumstances are exceptional,* preclude the accused from asserting constitutional claims, see Whitus v. Balkcom, 333 F.2d 496 (C.A. 5th Cir. 1964), we think that the deliberate bypassing by counsel of the contemporaneous objection rule as a part of trial strategy would have that effect in this case." Id. at p. 451–452, 85 S.Ct. at p. 569. (Emphasis added).

Clearly, the instant case is not one "where the circumstances are exceptional" so as to preclude the finding of an effective waiver of the right in question of the accused by his counsel. Id.; compare Whitus v. Balkcom, 333 F.2d 496 (5th Cir. 1964); Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963).

The wisdom and the propriety of permitting counsel in the proper circumstances to effectively waive certain rights of the accused as a matter of trial strategy or tactics is suggested by sound reasoning as well as authority. The sound reasoning underlying this proposition was succinctly set forth in the recent case of Rhay v. Browder, 342 F.2d 345,

decided February 5, 1965 (9th Cir.) (Duniway, J.):

"For many years, the Supreme Court has been steadily enlarging the scope of the guarantee of the right to counsel contained in the Sixth Amendment, and always on the grounds so eloquently stated in Powell v. [State of] Alabama, 1932, 287, U.S. 45, 68–69 [53 S.Ct. 55, 64, 77 L.Ed. 158.]

" 'The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel. Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defense, even though he have a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him. Without it, though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence. If that be true of men of intelligence, how much more true is it of the ignorant and illiterate, or those of feeble intellect. If in any case, civil or criminal, a state or federal court were arbitrarily to refuse to hear a party by counsel, employed by and appearing for him, it reasonably may not be doubted that such a refusal would be a denial of a hearing, and therefore, of due process in the constitutional sense.'

"See also Gideon v. Wainwright, 1963, 372 U.S. 335, 344–345 [83 S. Ct. 792, 9 L.Ed.2d 799]; Douglas v.

[People of State of] California, 1963, 372 U.S. 353 [83 S.Ct. 814, 9 L.Ed.2d 811]. We are in hearty agreement with these views. And we think that it inevitably flows from them that, when a defendant has counsel * * * it is counsel's decision on a question such as is here involved that must control. Counsel is the manager of the lawsuit; this is of the essence of the adversary system of which we are so proud. In the nature of things he must be, because he knows how to do the job and the defendant does not. That is why counsel must be there." Id.

That the concept of due process accords the accused in our society numerous and valuable rights needs no documentation. Variations in the factual context giving rise to the issue of waiver of any one right of the accused are infinite. Whether the waiver of a given right under the circumstances must be made by the accused personally or may be made by his counsel as a matter of trial strategy or tactics is necessarily an issue that must be resolved by the common law decision-making process, the process of inclusion and exclusion. The language of this court in Brubaker v. Dickson, 310 F.2d 30, 37 (9th Cir. 1962), appropriately described the proper judicial role:

> "Determining whether the demands of due process were met in such a case as this requires a decision as to whether 'upon the whole course of the proceedings,' and in all the attending circumstances, there was a denial of fundamental fairness; it is inevitably a question of judgment and degree."

We believe the record in this case abundantly shows there was no denial of fundamental fairness to appellee and that under the facts of this case the stipulation by counsel made in the presence of appellee and without objection by him constituted no failure of due process. The order of the district court granting the writ of habeas corpus is reversed and the district court is directed to dismiss the proceeding and remand appellee to the custody of appellant.

Reversed and remanded.

HAMLEY, Circuit Judge (concurring):

I concur in the opinion insofar as it holds that the district court did not have jurisdiction to entertain the application for a writ of habeas corpus because the applicant was in custody under another valid and unchallenged judgment and commitment. I express no view as to the second and independent ground stated in the opinion for reversing the district court order.