# IN THE COURT OF APPEALS OF IOWA

No. 14-1302
Filed September 10, 2015

**IN THE INTEREST OF D.L.,**
**Minor Child, Appellant.**

_____

Appeal from the Iowa District Court for Warren County, Kevin Parker, District Associate Judge.

D.L. appeals the juvenile court's order adjudicating him delinquent as to one count of second-degree sexual abuse and one count of indecent exposure. **AFFIRMED.**

Erin M. Carr of Carr & Wright, P.L.C., Des Moines, for appellant.

Thomas J. Miller, Attorney General, Bruce Kempkes, Assistant Attorney General, John Criswell, County Attorney, and Tracie Sehnert, Assistant County Attorney, for appellee State.

Considered by Danilson, C.J., and Potterfield and Bower, JJ.

**POTTERFIELD, J.**

D.L. appeals the juvenile court's order adjudicating him delinquent as to one count of second-degree sexual abuse and one count of indecent exposure.

**I. Factual and Procedural Background**

D.L. is one of seven children of parents Jim and Kelly. In the summer of 2013, two of the daughters—G.L., six years old at that time, and A.L., five years old—reported to the parents an incident that occurred in the girls' shared bedroom in which D.L., sixteen years old, exposed his genitals to them and inserted his penis in A.L.'s mouth. The parents confronted D.L., who denied the allegations. The parents continued to have difficulties with D.L. and eventually removed him from their home after he assaulted the father.

As the mother reflected upon the girls' accusations, she decided to ask A.L. about them again. Following further discussion, the parents decided to file a police report in January 2014. After the police report was filed, the girls spoke with a forensic interviewer about the allegations. Both girls participated in therapy before and after the alleged incident.

The State filed a delinquency petition with the juvenile court on February 14, 2014, alleging D.L. committed second-degree sexual abuse as to A.L. in violation of Iowa Code section 709.3(1)(b) (2013)[1] and indecent exposure as to

---

[1] "A person commits sexual abuse in the second degree when the person commits sexual abuse [and] . . . [t]he other person is under the age of twelve." Iowa Code § 709.3(1)(b). "Any sex act between persons is sexual abuse by either of the persons when the act is performed with the other person [and] . . . [s]uch other person is a child." Iowa Code § 709.1(3).

G.L. in violation of section 709.9.[2]  The juvenile court held a trial on the matter on May 29 and 30, 2014.  G.L. testified that one evening, while D.L. was babysitting, D.L. exposed his penis to both A.L. and G.L. in their bedroom.  She testified that she saw his penis and that D.L. touched A.L. with his penis.  However, on cross-examination, she testified she did not *see* D.L. touch A.L. because D.L. covered G.L.'s head with a blanket.  G.L. relied on A.L.'s statement to her regarding D.L.'s contact with A.L.

A.L. also testified to the incident that occurred in the girls' bedroom.  She testified that D.L. put his penis in her mouth while G.L. was in the room.  She testified that she later vomited in her mother's bedroom and that G.L. was not with her at that time.  She went on to testify that D.L. had made sexual contact with her on a different occasion in her mother's bedroom, at which time G.L. was not present.  Her testimony was not clear as to which incident was followed by her vomiting in her mother's room.

Kelly, the girls' mother, testified over D.L.'s objection regarding statements the girls made describing their allegations against D.L.  She testified:

> [T]hey told us what had happened, that [D.L.] had put his bad thing in their mouth . . . .  I had asked where this had happened at.  When they said that it was in their room, . . . it was at night . . . . [D.L.] had put the blanket over [G.L.]'s head so [G.L.] couldn't see what . . . was going on with [A.L.] . . . .

---

[2] Iowa Code section 709.9 provides:

> A person who exposes the person's genitals or pubes to another not the person's spouse, or who commits a sex act in the presence of or view of a third person, commits a serious misdemeanor, if:
> 1. The person does so to arouse or satisfy the sexual desires of either party; and
> 2. The person knows or reasonably should know that the act is offensive to the viewer.

The girls' therapist and their Department of Human Services (DHS) case worker both testified they believed the girls' accusations to be credible, the girls' accounts of the events to be genuine and not fabricated, and the content of the girls' testimony to be consistent with that of children who had experienced trauma.

D.L. presented testimony from Dr. Brian Steiner as an expert in sexual abuse. Dr. Steiner's opinion—based on review of another doctor's report and an interview with D.L.—was that D.L. was not likely to be sexually abusive. His opinion based on viewing recorded interviews with A.L. and G.L. was that the two girls were likely to say what the adults around them wanted them to say to gain approval. He testified the girls' descriptions of events were inconsistent between each telling, which he believed reflected poorly on the credibility of the allegations.

The juvenile court found the girls' testimony to be credible and specifically found they "were not 'coached' in their reconstruction of their memory of events." The court adjudicated D.L. delinquent as to both the sexual abuse and the indecent exposure charge. D.L. appeals.

**II. Standard and Scope of Review**

We review delinquency proceedings de novo. *In re A.K.*, 825 N.W.2d 46, 49–52 (Iowa 2013). We review issues both legal and factual questions under this standard. *In re D.L.C.*, 464 N.W.2d 881, 882 (Iowa 1991). Though we are not bound by them, we give weight to the factual findings of the juvenile court, especially regarding the credibility of witnesses. *A.K.*, 825 N.W.2d at 49. We presume D.L. to be innocent, and the State has the burden of proving beyond a

reasonable doubt that he committed the delinquent acts. *Id.* We review ineffective-assistance-of-counsel claims de novo. *State v. Straw*, 709 N.W.2d 128, 133 (Iowa 2006).

**III. Discussion—Direct Appeal**

D.L. raises two substantive issues on direct appeal. First, he claims there is insufficient evidence to support the juvenile court's adjudication. Second, he claims the court erred in admitting Kelly's hearsay testimony. D.L. also raises claim of ineffective assistance of counsel.

<u>A. Sufficiency of the Evidence</u>

D.L. argues the testimony of G.L. and A.L. was internally and externally inconsistent, lacking in experiential detail, and "impossible and absurd." He therefore asks this court to consider their testimony a nullity. *See State v. Lopez*, 633 N.W.2d 774, 785 (Iowa 2001) ("[T]estimony of a witness may be so impossible and absurd and self-contradictory that it should be deemed a nullity by the court."). We decline to do so.

D.L. relies primarily on this court's decision in *State v. Smith*. 508 N.W.2d 101, 103 (Iowa Ct. App. 1993). In that case, we deemed the complaining witnesses' testimony a nullity because it "border[ed] on the surreal" and "lack[ed] probative value." *Id.* at 104. As our supreme court has noted, the circumstances in *Smith* were extreme.

> In *Smith*, the girls described incidents of abuse they said happened while the defendant's wife lay sleeping one foot away. They also testified that the abuse occurred during a birthday party while fifteen to eighteen people were in the same room, opening presents. When asked about the details, the girls responded, "I don't know" to almost all of the questions. In addition, a careful medical examination of one of the girls revealed no physical

evidence of abuse although she claimed the defendant had hurt her.

*State v. Mitchell*, 568 N.W.2d 493, 503 (Iowa 1997) (citations omitted).

In this case, we find the girls' testimony to be consistent as to the operative facts that D.L. exposed himself in the girls' bedroom while they were both present and that he touched A.L. with his penis at that time. *See id.* (finding minor inconsistencies in complaining witness's testimony overcome because "she never changed the operative fact that she and [the accused] had sexual intercourse"). The girls' testimony is subject to a credibility determination, but it is not to be considered a nullity. The juvenile court heard testimony from both the State and the child bearing upon the girls' credibility.

Upon our de novo review and upon giving proper weight to the juvenile court's credibility determinations, we find the State satisfied its burden to present substantial evidence showing D.L. committed the offenses alleged beyond a reasonable doubt.

### B. Hearsay Testimony

D.L. next claims Kelly's testimony of the girls' statements made at home was inadmissible hearsay. He claims "there is no question that [he] was prejudice[d] by this error" because "[t]he child victims had little to no credibility in their reporting" and the mother's testimony was therefore the State's best evidence. We disagree and find D.L. was not prejudiced even if the testimony was improperly admitted.

We reverse for errors in evidentiary rulings only if the error affected a substantial right of a party—i.e. the party was prejudiced. Iowa R. Evid. 5.103(a);

*see In re A.S.*, 743 N.W.2d 865, 869 (Iowa Ct. App. 2007). "[W]e will not find prejudice if the admitted hearsay is merely cumulative." *State v. Hildreth*, 582 N.W.2d 167, 170 (Iowa 1998); *see also In re R.K.*, No. 12-1098, 2012 WL 3860762, at *4 (Iowa Ct. App. Sept. 6, 2012). Nothing in Kelly's purported hearsay testimony included any statements that were not also part of the girls' testimony. The girls' statements were also offered without objection through the testimony of the girls' therapist and the DHS worker. The juvenile court found the girls' testimony to be credible independent of Kelly's testimony. We find Kelly's testimony was cumulative and not prejudicial. D.L. is not entitled to relief based on the admission of that evidence.

### IV. Ineffective Assistance of Counsel—Limited Remand

D.L. asserted in his initial appeal he suffered from the ineffective assistance of counsel during the delinquency proceedings. The ineffective-assistance standards applied in criminal proceedings apply equally in juvenile court delinquency proceedings. *In re J.P.B.*, 419 N.W.2d 387, 390 (Iowa 1988); *see In re G.G.*, No. 04-0933, 2005 WL 2989681, at *2 (Iowa Ct. App. Nov. 9, 2005).

#### A. Procedural Posture

We will only resolve ineffective-assistance claims on direct appeal when the record is adequate. *State v. Clay*, 824 N.W.2d 488, 494 (Iowa 2012). In delinquency actions, if the record is inadequate, the proper procedure is a limited remand to the juvenile court for the purpose of developing a record and making an initial determination on the ineffective-assistance claims. *See* Iowa R. App. P. 6.1004; *see also In re T.R.*, No. 07-1777, 2008 WL 4569896, at *1 (Iowa Ct. App.

Oct. 15, 2008) (noting that limited remand to the juvenile court is an available outcome if the record were insufficient to rule on the merits of the ineffective-assistance claim on appeal); *G.G.*, 2005 WL 2989681, at *1–2 (describing the juvenile court proceedings concerning the appellant's ineffective-assistance claim on limited remand prior to appeal).

On our review of D.L.'s ineffective-assistance claims, we determined the record was not adequate to rule upon them.[3] On April 16, 2015, this court issued sua sponte an order for a limited remand. The order stated:

> We retain jurisdiction but remand to the juvenile court pursuant to Iowa Rule of Appellate Procedure 6.1004 for the limited purpose of enabling the juvenile court to take additional evidence as to D.L.'s ineffective-assistance-of-counsel claims. After considering the additional evidence, the juvenile court shall issue a ruling on the ineffective-assistance claims. It shall then, subject to that ruling, modify or affirm its adjudication order. Both parties may prepare supplemental briefs for this court following the juvenile court's ruling. A copy of the transcript of additional evidence, a copy of the juvenile court's order, and the parties' supplemental briefs as to the claims on remand shall be filed with the Clerk of the Supreme Court no later than ninety days following the filing of this order.

A hearing on the matter took place in juvenile court on May 7, 2015.

D.L. and his trial counsel testified at the remand hearing. The testimony revealed D.L. was not in the courtroom during the testimony of the two victims. The juvenile court did not issue any findings regarding the necessity of D.L.'s removal from the courtroom. At the beginning of the trial, an employee of the county attorney set up a video conferencing tool through which D.L. would

---

[3] D.L. first asked this court to preserve his ineffective-assistance claims for a future postconviction relief action in the event the record was inadequate. However, postconviction relief is not available following delinquency adjudications because the child was neither convicted of nor sentenced for a public offense. *See* Iowa Code § 822.2(1). The proper analogous proceeding is a limited remand. *See T.R.*, 2008 WL 4569896, at *1; *G.G.*, 2005 WL 2989681, at *1–2.

observe the victims' testimony from another room. The victims could not see or hear D.L. during their testimony, and D.L. was not able to confer with his counsel during the testimony. Early in G.L.'s testimony, the video conferencing tool failed. D.L. was unable to see or hear some amount of G.L.'s testimony before it was discovered that the line had been interrupted. There was no attempt to ascertain how much of G.L.'s testimony D.L. had missed or to read back the transcript of the testimony to him.

The court took a short break to attempt to reestablish the video link, but it was ultimately unable to do so. D.L. was then seated in a hallway outside an open door to the courtroom for the remainder of the victims' testimony. He could not see the witnesses as they testified and at times could not discern what they were saying from outside the room. D.L. was unable to confer with his counsel while seated in the hallway. D.L. ultimately took the stand in his own defense without having heard the entirety of the victims' testimony. D.L.'s counsel did not object to these proceedings and failed to make a record of them during the trial. Counsel testified on remand in response to questions about the exclusion of D.L. during the witnesses' testimony and counsel's introduction of transcripts of interviews and depositions of the victims as part of D.L.'s defense.

The juvenile court denied D.L. relief on his ineffective-assistance claims and affirmed its adjudication order.

### B. Ineffective-Assistance Analysis

To succeed on an ineffective-assistance claim, D.L. must show that his counsel failed to perform an essential duty and that prejudice resulted from that failure. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Clay*, 824

N.W.2d 488, 494–96. A failure to prove either prong causes the ineffective-assistance claim to fail as well. *Clay*, 824 N.W.2d at 495. We begin with a presumption that counsel performed competently—i.e. did not fail to perform an essential duty. *Id.* "[W]e will not reverse where counsel has made a reasonable decision concerning trial tactics and strategy, even if such judgments ultimately fail." *State v. Ondayog*, 722 N.W.2d 778, 786 (Iowa 2006) (citation omitted).

*1. Essential Duty: Deposition and Interview Evidence.* D.L. asserts his counsel's submission of the victims' deposition transcripts and recorded interviews was a breach of an essential duty because it strengthened the State's case. He claims "trial counsel convicted her own client" because the State "produced no evidence to support the charge of indecent exposure as it related to G.L." [4] He contends the only evidence in the record from which the court could have concluded his guilt was evidence presented by his own counsel. However, the record belies this claim. In her testimony, G.L. made four very clear statements that she saw D.L. genitals in her room on the same evening that A.L. testified D.L. touched her. Therefore it is not the case that no evidence existed to support the juvenile court's finding of guilt as to the indecent exposure charge.

D.L.'s trial counsel testified she had express strategic reasons for introducing the interview and deposition transcripts at trial. Counsel's submission of the evidence in question was a reasonable trial strategy, as it was used to impeach the girls' credibility by showing inconsistencies in their several retellings

---

[4] D.L.'s counsel herself also testified on remand that the State had produced no evidence of the alleged delinquent act when it rested its case. This assertion, however, is contradicted by the record.

of the incident, which may have indicated they had "no solid memory" of the incident or they had been coached into making the accusations against D.L. Counsel's submission of this evidence was a reasonable trial strategy whether or not it was successful, and she did not fail to perform an essential duty in submitting it. *See id.* We agree with the juvenile court: D.L. is not entitled to relief based on this claim.

2. *Essential Duty: Right of Confrontation.* D.L. next claims his counsel was ineffective for failing to guard his constitutional right to confront his accusers.[5] *See* U.S. Const. amend. VI ("[T]he accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ."). He argues the use of the video feed did not satisfy the U.S. Supreme Court's requirements in *Maryland v. Craig*, which mandate a denial of face-to-face confrontation must be "necessary to further an important public policy" and "the reliability of the testimony [must be] otherwise assured." 497 U.S. 836, 850 (1990); *see also State v. Rogerson*, 855 N.W.2d 495, 498–506 (Iowa 2014). He argues the use of the video feed was therefore unconstitutional and his counsel failed to perform an essential duty by not objecting to the court's failure to comply with the *Craig* requirements and to the violation of his constitutional protections.[6]

---

[5] D.L. raises another, more specific claim regarding the video feed: his counsel was ineffective for failing to make a record that the video feed failed early in G.L.'s testimony. Because a record was developed regarding these facts on remand, this claim is moot. We now have the benefit of a sufficient record, so we will consider counsel's performance as it relates to her alleged failure to guard D.L.'s sixth amendment rights.

[6] The State argues this issue is in part waived because it was raised for the first time in D.L.'s supplemental brief, citing *Bennett v. MC No. 619, Inc.*, 586 N.W.2d 512, 521 (Iowa 1998). Our review of D.L.'s initial appellate brief and reply brief reveals that he raised the issue of the juvenile court's comportment with *Craig* and counsel's failure to object

A defendant's right to face-to-face confrontation has always played a "fundamental role . . . in judicial proceedings." *Rogerson*, 855 N.W.2d at 498; *see Craig*, 497 U.S. at 846 ("The combined effect of these elements of confrontation—physical presence, oath, cross-examination, and observations of demeanor by the trier of fact—serves the purposes of the Confrontation Clause by ensuring evidence admitted against an accused is reliable and subject to . . . rigorous adversarial testing.") In this case, the juvenile court was required to comport with the *Craig* test: "[T]he court must make a case-specific determination that the denial of the defendant's confrontation right is necessary to further an important public interest. If the court finds such an interest it must assure the reliability of the . . . testimony." *Rogerson*, 855 N.W.2d at 505 (citing *Craig*, 497 U.S. at 851). The record shows no such determination was made by the juvenile court.

The State asserts D.L.'s trial counsel simply waived D.L.'s confrontation right on his behalf as an exercise of her "authority to manage the conduct of the trial."[7] *See Taylor v. Illinois*, 484 U.S. 400, 418 (1988). The State refers us to two cases, but those cases are distinguishable from the one before us now. In *State v. Rosales-Martinez*, the trial court heard testimony and issued findings to

---

prior to the separate proceedings we ordered on limited remand. The issue is properly before us now.

[7] The State implies in its argument that counsel consciously elected to waive D.L.'s confrontation right as a trial strategy. However, counsel could not have made such a strategic determination at the time of trial. Her testimony on remand indicates she was not aware of *Craig* or the procedural prerequisites needed to exclude D.L. from the courtroom until after the trial concluded. Counsel could not have consciously elected to forego procedural requirements of which she was not aware as a matter of strategy. It is therefore irrelevant whether counsel hypothetically would or would not have advised D.L. to waive the confrontation right had she possessed the requisite knowledge at the time of trial.

comport with the *Craig* test. No. 02-0399, 2003 WL 21229134, at \*3 (Iowa Ct. App. May 29, 2003).[8] Because the court complied with *Craig*, "counsel had no grounds on which to object to the procedure." *Id.* *Rosales-Martinez* is patently distinguishable from the case before us, in which the court took no steps to comport with *Craig*.

In *Wilson v. Gray*, the Ninth Circuit Court of Appeals acknowledged that a defendant need not waive the confrontation right personally—the waiver can be accomplished through counsel. 345 F.2d 282, 286–87 & n. 7. However, the waiver in that case was accomplished by formal stipulation on the record and in the presence of the defendant. *Id.* at 287. *Wilson* is distinguishable from this case because the purported waiver of D.L.'s confrontation right was not accomplished on the record, in D.L.'s presence, or even with D.L.'s knowledge of his right to decide whether to waive it.

We do not agree with the State that counsel properly waived D.L.'s confrontation right on his behalf. There is no evidence D.L. elected to waive the right or had any knowledge that counsel was waiving it for him. Nothing in the record shows by what procedure the purported waiver was accomplished. We recognize, as the State asserts, defense counsel need not "recognize and raise every conceivable constitutional claim." *Engle v. Isaac*, 456 U.S. 107, 134 (1982). However, in this case, counsel herself took affirmative action—either

---

[8] The State erroneously cites to *Rosales-Martinez v. State*, No. 10-2078, 2011 WL 6740152, at \*9 (Iowa Ct. App. Dec. 21, 20111). This citation refers us to Rosales-Martinez's postconviction relief appeal, in which we declined to rule on the issue of the defendant's waiver of his confrontation right because the issue had been previously determined on direct appeal.

explicitly or implicitly waiving D.L.'s confrontation right—that gave rise to a violation of a hallmark constitutional protection.

D.L.'s confrontation right was improperly violated, and counsel failed to perform an essential duty when she took no action to ensure her client's right was protected. Counsel had a duty either to ensure the juvenile court complied with *Craig* or to waive D.L.'s confrontation right—with his knowledge and consent.

*3. Prejudice.* Though D.L. has demonstrated his counsel failed to perform an essential duty, he is not entitled to relief unless he can demonstrate that he was prejudiced by that failure. *See State v. Schaer*, 757 N.W.2d 630, 637 (Iowa 2008). To demonstrate prejudice, D.L. must show a "reasonable probab[ility] that the result of the proceeding would have been different" if counsel had performed her essential duty; put another way, our confidence in the outcome of the proceeding must be undermined. *See id.* (citations omitted).

In his supplemental brief, D.L. fails to allege specifically how the results of his trial would have differed if counsel had acted to preserve his confrontation right. He argues, "Had trial counsel effectively defended [D.L.'s] right to confrontation he would have likely either been able to sit face-to-face with his accuser, had access to contemporaneous communication with trial counsel during examination, and/or had his witnesses informed that [he] would be seeing their testimony." However, he fails to explain how he would have used any of these factual possibilities to change the outcome of his trial.

He does not assert the *Craig* test would not have been satisfied, how the victims' testimony would have been different if he had been present in the

courtroom, or how contemporaneous communication with his counsel could have had a dispositive impact on the proceedings. D.L.'s conclusory allegation that "[t]here is no question that [he] was prejudice[d] by trial counsel's failure" does not undermine our confidence in the outcome of this case. Nothing in the new record developed on remand indicates a different outcome would have been reached if counsel had timely objected to the violation of D.L.'s right of confrontation. We therefore affirm.

### IV. Conclusion

We find substantial evidence in the record to support the juvenile court's delinquency adjudication. We find Kelly's testimony was cumulative and not prejudicial. We decline to disturb the juvenile court's adjudication on these bases. We find D.L.'s counsel performed competently in admitting witnesses' depositions and interviews into the record. Lastly, D.L. has failed to show he was prejudiced by counsel's failure to object to the juvenile court's procedures that implicated his right to confrontation. We affirm.

**AFFIRMED.**